Judge Underwood
delivered the Opinion of the Court in this case, on the 96th of April last: upon which a petition for a re^ hearing was presented, which is now overruled.
Combs bound himself to convey fifty two acres of land to Tarlton, upon the determination of a suit then pending between Martin Nall and Samuel Johnson. The title was in Nall. Combs claimed under a contract with *465 Walker, who claimed under Fenwick, who, by contract with Nall, claimed four hundred acres, of which the said fifty two were part.
A writing binding the obligor to convey hind, is a covenant real; which, if not brol-en in the life time of the covenantee, goes to his heirs; if broken in his lifetime, itgoes to his personal representative ; who is entitled to the damages for the breach. And though the covenantee, in his life time, and after the breach, may have sought a specific execution, by bill in chancery, and his heirs may h ive revived the suit, and obtained the decree, without making the personal representative a party — he will'not he bound by it: his right to the damages is not destroyed, nor his action barred, by such decree.— There may be a decree in favor of the heirs for a specific execution, saving the rights of creditors : but the personal representative is ah indispensable party — his right, not affected .where he is omitted.
Tarlton, in his life time, instituted a suit in chancery against Nall, Fenwick, Walker, Combs and others, for the purpose of obtaining the title. Such proceedings were had in this suit, that ultimately, two.of the heirs of Tarlton, the others consenting, obtained the title to the fifty two acres mentioned in the bond of Combs, from tfie heirs of Nall. Tarlton and Nall both died be* fore the contest as to the title was terminated, and their heirs, by revivor, brought the dispute to an end. The bond of Combs for a title was exhibited in the original bill, and made the foundation upon which Tarlton’s claim to the fifty two acres rested.
Since the decree for a title, and since the execution of deeds in pursuance of the decree, the administrator and administratrix of Tarlton instituted their action of covenant, upon the bond of Combs, assigning breaches in his.nonconveyance of the title, according to his covenant, and in his entire destitution of title. They obtained a verdict and judgment for nine hundred and seven dollars and fifteen cents-: to reverse which, Combs prosecutes a writ of error.
Upon 4he death of Tarlton, who did the bond of Uombs belong tó ? Did it pass to the administrators, or go to'the heirs ? The proper answer depends upon the time when the covenant was broken. It b-oken in the life time of the obligee, real covenants go to the administrator ; otherwise to the heir. Abney vs. Brownlee, 2 Bibb, 170; Hatcher vs. Galloway's Executots Ib. 180; Pawling vs. Speed's Executor, 5 Mon. 582. The covenant of Combs is of that description denominated real, according to the foregoing authorities.
In an action for breach of covenant in failing to convey land, the measure of damages is the I a :hase money and interest :— there can be no deduction for rents and profits received by the covenantee. If the covenantee has had possession, — has taken the rents profits — has made improveinelits, or, com mitted waste fyc these things,too complicated for a jury, properly belong to chancery, and must be settled there. If a specific execution ola contract to convey land is decreed in favorof heirs: and the personal representative, also recovers damages for the breach in failing to convey — the covenantor may be relieved from the double burden, in equity.
*466 The covenant of Combs was broken in the life timé of Tarlton, and hence his administrators, and not hiss heirs, are entitled to it. Tarlton, bv the institution of his suit in chancery, manifested a disposition to coerce a specific execution of the contract by obtaining the title. But such manifestation cannot change the eeltfeel principles of the law. It is not like the case of Dawson &c. vs. Clay’s heirs 1 J. J. Mar. 168, where a devise of land, held by hond, is supposed to control the power which the administrator with the will annexed would otherwise possess.
Upon the death of Tarlton, the suit instituted hy hint was revived in the names of his heirs. His personal representatives were no' parties to the suit. Conceding that a contract for land, violated in tbeUfetime of the obligee, may be specifically executed in favor of the heirs, when the administrator consents, or even against his consent, when the rights of creditors would not therebv he prejudiced, still it is indispensable that the administrator should be a parly to the proceeding which divests him of a legal right, and in effect transfers the obligation to the heirs. As the covenant of Combs belonged to tlie defendants in error, and as they were not parties to the suit in chancery, the decree cannot furnish any defence to this action.
The only remaining question, of any importance, relates to the amount of. damages assessed. The verdict was made up of the purchase money paid to Combs and interest thereon. In the progress of the trial, two grounds were assumed upon which to lessen the damages : first, that the heirs of Tarlton having obtained the title, they ought not to hold it, and likewise compel Combs to repay the purchase money with interest to the administrators ; and second, that the rents and profits of the'land, which amounted to a large sum, ought to have been considered by the jury, and set off against the interest. Combs moved for instructions, embracing both points, which were overruled.
There is nothing in the first ground, if the conclusion, that the covenant on Tarlton’s death belonged to his administrators, be correct, then the heirs had no *467 right to use it for the purpose of procuring the title, without bringing the administrators before the court. Tlie legal rights of administrators cannot be divested by unauthorized proceedings on the part of tlie heirs.
The second ground is one of more difficulty. Where the profits of the land in possession of the vende*,-is of more value than the interest of the money enjoyed by tlie vendor, it is utterly unjust to allow the .vendee to recover the purchase money with its interest,, and to hold the profits of the land. If the' vendee is evicted by an adverse paramount claim, and becomes responsible to the evictor for the mesne profits, then he ought to recover interest from his vendor for as many' years as he is or .may be required to account to the evictor for tlie profits. But where the vendee is not bound to account for the profits of the land to any one, and w.he:©. as in this case, the profits greatly exceed the interest of the purchase money, manifest’ injustice would result from permitting the vendee to recover interest, and likewise to keep the profits. The principle upon which, all contracts ought to. be-rescinded, is, that the parties should be placed as nearly as possible in statu quo. If the contract between vendor and vendee is set aside by the chancellor, he would never give interest to the vendee, and allow him also to keep the profits. On the contrary', he would say to the vendee, as you have enjoyed all you contracted for, and as the profits of the land are as valuable, or more so, than the interest on the purchase money, you shall not have both; but if you require a restoration of purchase money and interest, you must restore, on your part, the land and its profits; bn', s by the contract, you and the vendor regarded the laud and purchase money equivalent to each other, I (the chancellor) will regard the use of each as of the same value, and take no account, between you for interest or profits. This doctrine — where the land yields a profit, or can be made, by such care, attention and management as proprietors usually bestow, to. yield a profit equal to the interest on the purchase money — is sustained by the clearest principles of reciprocal justice. But where the land yields no profit, and cannot *468 be made to yield any, without improving it by the expenditure of money or labor of both, then there may be-strong reasons for insisting, in ease I lie contract be rescinded, that the purchase money with its interest should be restored by the vendor. In such a ease, the vendee generally regards the'prospect of a .rise or appreciation in the price of the land, as the equivalent or consideration which he receives for the interest on the.' purchase money, and if he cannot, in consequence of the default of the vendor, get the land, being deprived of the.contemplated rise which constituted the leading motive for the coutract, and receiving no esplees, or profits, the land not being.in a condition to yield any, justice would require the restoration of purchase money, with interest, upon a rescission of the contract. The cases first decided by this court, were, in all probability, of this description.
Whether the rules which would govern in chancery, can be applied with safety to a trial at law, has been a subject of much consideration with the court. The rules of right ought to be the same in every tribunal, and should be applied so as to settle controversies with all practicable speed. To avoid the expense and delay of another suit woiild be desirable, if insuperable objections did not present themselves. Theie are, however, too many questions growing out'oí the reoissiou oí a contract between vendor and vendee put into possession, to allow thein to be considered and settled by the jury upon the trial of an action of covenant. Tñe vendor may be entitled to a set-off for the profits of the laud, for waste and damage, and against these claims the vendee may be entitled to an allowance for improvements. To settle such muitiíai ious and complicated matters, the chancellor is inore competent to administer justice than the common law judge aided by the hasty inquiry of a jury. We shall therefore leave the rule at law to stand as we found it, and as recognized by the case of Cox's heirs ,vs. Strode, 2 Bibb, 273. The vendee is entitled to Ins judgment at law for the amount of the purchase money and interest, and then the vendor may resort to the chancellor lor a settlement of the rents, profits, waste and im *469 provements, and for such decree as equity requires. Combs may have ample remedy in chancery, to prevent the double burden of the loss of the land and the payment of the judgment for damages.
It results from this view of the subject, that the judgment must be affirmed, with costs.