## Combs *vs* Tarlton's Adm'rs. and Heirs.

CHANCERY.

APPEAL FROM THE FRANKLIN CIRCUIT.

*Case* 64.

*Vendor and vendee. Specific performance. Merger. Estoppel.*

JUDGE EWING delivered the opinion of the Court.

*December* 24.

TARLTON's administrators recovered a judgment against Combs, for nine hundred and seven dollars and fifteen cents, the consideration and interest for a breach of covenant by Combs, in his failure to convey 52 acres of land to their intestate, which he had sold and executed his bond to convey, which judgment was affirmed by this Court: a statement of the case will be found in 2 *Dana*, 464. Upon the return of the cause to the Circuit Court, Combs filed his bill of injunction in accordance with the intimations given in the opinion as to his remedy, charging that his bond for the fifty two acres had been made the basis of a proceeding in chancery, instituted by Tarlton in his lifetime, and revived by his heirs, by the approbation and consent of his administrators, against Martin Nall, and revived against his heirs, whereby the heirs of Tarlton, *or two of* them, by the consent of the rest, had obtained a title from Nall's heirs for the land embraced in Combs' bond; and prays a perpetuation of his injunction against the judgment at law, or a decree for the conveyance of the title to him, with the rents of the same.

The allegations of the bill.

The administrators and heirs of Tarlton answered, the former admitting that the procedure and decree for a title was had by their consent, but all concurred in alleging that Tarlton, holding not only the bond upon Combs, but other bonds upon others, for several portions of a tract of 400 acres of land, which had been purchased by Joseph Fenwick from Martin Nall and filed his bill against Nall's heirs for a title, which was revived by his heirs after his death, but no part of the consideration having been paid by Fenwick to Nall or his representatives, they were wholy unable to obtain a title, upon the bond of Combs

The substance of the answer.

or the others which he held, and being so unable to get a title, they made a compromise with Nall's heirs, by which, for the consideration of $2000 paid them, and other considerations, a decree was entered in their favor for a title to the whole, for which the bonds were held, including the 52 acres purchased from Combs, and that Combs had rescinded his contract with Walker, from whom he had purchased, and received back the consideration.

*Facts appearing in the record.*

It appears that Fenwick purchased 400 acres of land from Nall, and took his bond for a conveyance, and executed his notes for the consideration, in 1790. That Fenwick sold 90 acres of his purchase to Walker, who sold to Combs, who sold 52 acres to Tarlton, and bonds were executed by the several vendors for a title; that Fenwick also sold 170 acres of his purchase from Nall, to Williams, who sold and assigned Fenwick's bond for a title to Hendrick, who sold and assigned 19⅜ acres of the quantity to Twyman, and the residue, namely, 150⅝ acres to Tarlton; that Fenwick had deposited Williams' bond for £320, the consideration of his purchase, in the hands of Nall as a pledge or collateral security for that amount of the consideration owing by him to Nall, also a bond on one Holton; that Hendrick, in his purchase from Williams, bound himself to pay Williams' bond and release him from responsibility on account of it, and Twyman and Tarlton, in their purchase from Hendrick, agreed and bound themselves, each, to pay and satisfy Williams' bond deposited with Nall, rateably with the quantity of land which each had purchased from Hendrick, and for which Fenwick's bond had been assigned to them. Williams' bond for £320 bore interest from the 1st February, 1795, and the consent decree was rendered on the 3d of April, 1829, in favor of Tarlton's heirs, whereby they obtained a title for the whole for which they set up claim as sub-purchaser, including the 52 acres purchased from Combs, upon the terms of paying $2000, and surrendering all claim against Nall's heirs for $415, which the administrators of Mrs. Nall had recovered against Tarlton's heirs for dower, also two small notes held by Tarlton in his lifetime, against Nall.

The only foundation of equity set up by Tarlton's heirs against Nall's heirs, Combs and others, for a title to the 52 acres, was Combs' bond, and the only impediment to a title was the non-payment of the consideration by Fenwick. Of that consideration Tarlton was bound, by his contract with Hendrick, to pay a rateable part of £320 and interest, as 150⅝ is to 19⅝. Had he paid it to that extent, the impediment would have been removed. And from the estimate which we have made, it appears that the amount of principal and interest up to the date of the consent decree, which he was bound to pay to obtain a title to the 150⅝ acres, exceeds the amount of the $2000 which his representatives did pay, and also the dower claim and the two small notes and interest, which they held upon Nall—so that they paid nothing for the 52 acres; have had the possession of it under Combs' equity for about forty years, and have, upon that equity alone, obtained a perfect title from Nall's heirs, from whose ancestor the equity, by intermediate purchasers through Combs, was derived. Indeed, as they obtained their equity and the possession from Combs, they ought not to have made a new contract for the title, upon terms subjecting him to an increased burthen, without consulting him, and if they did, as the necessary means of perfecting their title and quieting their possession, upon no principle could they subject him to a greater amount of the burthen than a rateable sum of the excess which they had to pay, over that which they were bound to pay, which the fifty-two acres bore to the whole quantity of land which they obtained the title for. He might have been equitably bound to pay his rateable share of the amount, with the other sub-purchasers from Fenwick, *necessarily* expended in extinguishing the original consideration to Nall, produced by the defalcation of Fenwick, *after* applying to that object the amount due on Williams' bond deposited with Nall for that purpose, and which it was the duty of Tarlton's representatives to pay. But if the payment of that bond and interest satisfied the whole consideration, or so much thereof as fell upon the claims held by Tarlton's heirs, including Combs' purchase, then

Vol. II. 25

### Margin notes

COMBS
*vs*
TARLTON'S AD'S. AND HEIRS.

A purchaser of a bond for title to land, has no right to make a new contract with the vendor and pay more than was due from the original vendee, and charge the assignor of such bond for such advancement.

Such assignor of a bond *may* be equitably bound to pay a sum *necessarily* expended in procuring the title.

COMBS
*vs*
TARLTON'S AD'S.
AND HEIRS.

The assignee of a bond for the conveyance of land has his election to sue in chancery for a specific execution, or at law for damages for a failure to convey, and his election and pursuit of one remedy will merge the bond and bar the other.

Combs or any of the sub-purchasers, were not liable to pay any thing.

Had Tarlton lived he would have had his election to proceed in chancery upon the bond of Combs for a specific enforcement of the title, or at law for damages for a breach of covenant, and his election and enforcement of one remedy, would merge the bond and preclude him from resorting to the other upon it. So that, had he succeeded in enforcing the contract and obtaining a title upon the bond, he could not afterwards have maintained a suit at law for damages. Had he elected to sue at law and recovered damages, such recovery would be a merger of the bond and a cancelment of the contract, and upon the payment of the amount Combs would have a right to be restored to the land, and to an account for rents, if any, at least equivalent to the interest upon the consideration refunded. If in electing to enforce the contract, Tarlton had to pay, as the *necessary* means to obtain a title, more than he was *bound* to pay, then Combs, who would have been a necessary party, should have been made to contribute his rateable share of the increased burthen. But that contribution should have been decreed in the same suit, and the failure to obtain it, would by no means have entitled Tarlton to resort to a suit at law upon the bond, as still outstanding. Had he not obtained a contribution in the original suit, and there was nothing in the decree to bar it, he might perhaps have resorted to a suit in chancery, based upon that proceeding, to obtain it. But as no advancement was made to obtain a title over and above what he was bound to pay, he could not be entitled to contribution from Combs either in chancery or at law.

The assignee of a bond, suing in chancery for a specific execution, being called on and required to pay more to procure title, should make his assignor party, and require him to make such additional advance to relieve the title; if he fail to do so in that suit, he cannot afterwards sue on the bond and recover such advance.

Though an uncertainty may arise whether the administrator or the heirs should proceed on a bond given for the conveyance of land, yet if the heir proceed to a decree, the administrator being a party, the administrator cannot

Though by the death of Tarlton a difficulty and uncertainty might arise, as to whether the administrators or heirs might be entitled to remedy upon the bond; this should never have the effect of placing Combs in a worse condition. And had the administrators been parties to the suit for a specific enforcement, they would unquestionably have been bared, as well as their intestate, from afterwards maintaining a suit at law upon the bond; and if even their assent to the proceeding of the heirs, upon

the bond, might not have the same effect even at law, which we are not now prepared to concede, it certainly should have the effect, in chancery, of restraining them from the enforcement of the judgment, or at least so much thereof as was not necessary to cover any equitable contribution which should have been made by Combs, in removing any incumbrance from the title, or obstruction to its enforcement. He unquestionably cannot, by the conflict of remedies between the heirs and administrators, be subjected to the double loss of both land and consideration.

COMBS
vs
TARLTON'S AD'S.
AND HEIRS.

afterwards proceed at law. Though he be no party, yet if he assent, may it not have the same effect even at law. — Qr.

Nor can we perceive any thing in the objection taken by the counsel for Tarlton's representatives, founded upon the skeleton record exhibited between Combs and Walker, tending to show a partial rescision of the contract between them, whereby Combs derived his equity to the land sold to Tarlton, that can be made available to deprive Combs of the relief which he seeks.

It seems that both Combs and Walker were parties to the suit instituted by Tarlton against Nall and others for a title. That after the institution of that suit, and while the same was pending, Combs commenced a suit in chancery against Walker, to which Tarlton was not a party, for the enforcement of his title to the 90 acres, of which the 52 sold to Tarlton was a part, or to rescind the contract; and that such proceedings were had as to obtain a decree rescinding the contract as to forty-seven and a half acres, and an order restoring him to the possession and title of that number of acres out of the 100½ acres which Combs had given in exchange to Walker for the 90 acres, and a decree for a conveyance by Nall's heirs, of the residue, or 42½ acres of the 90. But this decree seems never to have been carried into execution or a conveyance made by Nall's heirs. And afterwards, the consent decree was obtained by Tarlton's heirs against Nall's heirs, and a conveyance made accordingly; so that they became invested with the legal title notwithstanding the proceeding and decree in favor of Combs. It may also be inferred, from several deeds exhibited in the record, that Combs has made deeds to several of the Branham's of perhaps the whole of the 100½ acres which he

WILLIAMS' AD'R.
AND HEIRS.
vs
STARKE & EWING.
gave in exchange to Walker. But this is not clearly ascertainable, as there is no proof of identity. But conceding the parcels conveyed to be parcels of the 100½ acres, we cannot perceive how these facts can affect the complainant's equity, or be made available by the defendants against it.

*Matters inter alios acta no evidence.*

1st. They were matters *inter alios acta,* by which the interest of Tarlton's representatives were in no wise affected, and of which they should not now be allowed to take advantage.

2d. They took place and were transacted during the pendency of their suit, and could not and did not affect their equity, or oppose any obstruction to their enforcement of the title which they have perfected by a conveyance from Nall's heirs, with whom it rested. Walker's representatives alone have a right to complain, between whom and Combs this matter should be permitted to rest.

It is, therefore, the opinion of this Court, that the decree of the Circuit Court be reversed and cause remanded, that a decree may be rendered perpetuating the injunction against the whole of the judgment at law except the costs, and decreeing to the complainant his costs in this suit; and the appellant is entitled to his costs in this Court.

*Morehead & Reed* for appellant; *Todd* for appellees.