## George W. Elder v. Simcoe Chapman.

1. REAL ESTATE—*When Party Agreeing to Convey Need Not Have Title.*—A person who has made a contract to convey land need not have title until it becomes his duty to convey, and all averments of defects in or want of title to the land before that duty arises, in pleadings in a suit concerning such contract are useless and of no effect.

2. REMEDIES—*On Agreements to Convey Real Estate.*—A contracted for the sale of certain land to B and received from B as a payment on the purchase under an agreement between B and C, a receipt for the commissions to be paid to C for effecting the sale. B sued to recover the amount of the receipt, claiming a cancellation of the agreement by A. *Held*, that as no money had been paid none could be recovered, and that the remedy was by suit for a breach of the agreement in which B should allege and prove his own ability and readiness to perform.

Assumpsit, to recover a partial payment on a purchase of land. Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the March term, 1897. Affirmed. Opinion filed June 14, 1897.

FLOWER, SMITH & MUSGRAVE, attorneys for appellants.

E. R. Eldridge, W. T. Alden and H. S. Derby, attorneys for appellee.

Mr. Presiding Justice Shepard delivered the following opinion :

As said in appellant's brief : "The simple question involved in this record is whether or not the contract between the plaintiff and the defendant was void as a gambling contract, by virtue of the provisions for the distribution of the lots contained in the proposed syndicate agreement annexed thereto and made a part thereof."

The contract referred to recites the receipt by appellee from appellant of $3,000, as part payment toward the purchase of blocks 5 and 6 of a certain subdivision of land (containing ninety-six lots), bargained by appellee to be sold to appellant for $33,000, which said $3,000 the declaration avers one "Robert S. Elder advanced and paid to the said Simcoe Chapman (appellee), for and on account of the plaintiff (appellant), * *. * by way of commissions or services, or in some manner satisfactory to the said Chapman, which said $3,000 said Simcoe Chapman in and by said last mentioned agreement duly acknowledged the receipt of from this plaintiff and for the payment of which to the said Robert S. Elder, he then and there : became duly obligated to the said Robert S. Elder."

The contract further provided that appellant should act as trustee for as many shareholders as there were lots (96) in a syndicate to be formed for the purchase of the lots in accordance with the terms of a form of certificate to be given to each shareholder, thereto attached and made a part of the contract; and that appellee should accept notes and trust deeds made by future shareholders in the syndicate, in part payment of the said contract price, and the balance in cash upon the delivery of warranty deeds.

The form of certificate provided for, and made a part of the contract, first recites the receipt of fifty dollars from a person, whose name is left blank and is "called the subscriber," as the "first payment for one share of stock in the

syndicate formed for the purchase and development " of the said lots, and then proceed as follows:

" This receipt is given on the following conditions, which the said subscriber hereby accepts : The said fifty ($50) dollars payment is made for the purpose of obtaining a contract with the owner of said premises by G. W. Elder, as trustee for the holders of this and ninety-five (95) other shares of stock in said syndicate. Each share is of the value of four hundred ($400) dollars, and entitles the holder thereof to receive a good and sufficient warranty deed and a merchantable abstract to one lot in the subdivision of said premises, upon the fulfillment of each and every of the conditions herein specified.

Said subscriber agrees to further pay the sum of three hundred and fifty ($350) dollars, less one ninety-sixth (1-96) part of the profits derived by sale of choice of lots as hereinafter provided, in the manner following : The sum of fifty ($50) dollars when all of said shares are subscribed for, and the balance on delivery of warranty deed, or in substantially three equal payments, payable in one, two and three years after February 16, 1891. Said deferred payments to be secured by trust deed on the lot assigned and conveyed to said shareholder.

The assigning of lots shall be under the direction of a board of directors, who shall be elected by the shareholders. Each share shall constitute one vote, and may be voted by the holder of said share or his proxy.

Said directors shall notify each of said ninety-six (96) shareholders of the time and place for the assigning of said lots. Said notice to be deposited in the post office of the city of Chicago; with postage prepaid, at least five days before the date of the meeting for the assignment of said lots.

At said meeting bids will be received from said shareholders for choice of lots. The highest bidder, in every case, shall immediately select his choice of said lots. Bids will be received for choice of the lots remaining unselected, until there appears to be no further choice, when the remaining shareholders will draw by lot from the remaining unselected lots.

Upon the selection of a lot by a shareholder, said shareholder shall immediately pay one-fourth of the amount he has bid for choice, in cash. The remaining three-fourths of said amount shall be paid in cash upon delivery of the warranty deed to the lot so selected by said shareholder, or may be divided into substantially three equal payments, consolidated with the deferred payments above mentioned, and all be secured as said deferred payments first above mentioned.

No one shall originally subscribe for more than five shares of stock in this syndicate, without the consent of the holders of two-thirds of the shares at that time subscribed for. Said subscribers shall receive a warranty deed to the lots selected by him upon the fulfillment of the conditions hereinbefore mentioned ten days after the assignment of said lots as aforesaid. On failure of said subscriber to fulfill each and every of the conditions hereinbefore mentioned at the time and in the manner herein mentioned (time being the essence of this certificate), this share of stock in said syndicate shall be forfeited.

....................... [Seal.]
                                   Subscriber.
            Residence......................

....................... [Seal.]
                                   Trustee."

The record discloses a plat of said lots with a valuation of each lot marked thereon, ranging from $350 to $1,550, and also a bill rendered by R. S. Elder to the appellee bearing the same date as said contract, and receipted by said R. S. Elder as follows:

"Telephone 2879.          Chicago, February 16, 1891.
        Mr. Simcoe Chapman,
                              To R. S. Elder, *Dr.*
            Real Estate and Loans,
                              Room 10, 110 Dearborn street.
To commission on sale of blocks five (5) and six (6),
        in North Chicago Lawn, to G. W. Elder......$3,000.
Received payment by contract to G. W. Elder of even date herewith.                          R. S. Elder."

The record also discloses a contract dated December 1, 1890, between the appellee and said R. S. Elder constituting the latter appellee's sole agent for the sale of said lots at the prices named in said plat, and providing for various other matters not pertinent to the issue raised by this appeal; and it also discloses a contract between the two Elders bearing the same date as that between the parties to this suit, concerning the same property and providing that'R. S. Elder should make the advance payment on the said contract between appellee and appellant, and for a division between themselves of the profits to be realized out of the syndicate transaction, all of which may be said to be merely preliminary to and explanatory of the circumstances and surroundings attendant upon the making of the contract sued upon.

To the action, the appellant pleaded specially that the contract sued upon was made in pursuance of a corrupt and unlawful agreement to dispose of lots of land by lot and other unlawful agreements, by means whereof and by force of the statute, said contract was wholly void in law.

Upon the trial appellant, to maintain his action, offered in evidence the written agreement between himself and the appellee, and the other papers above referred to, and certain oral testimony by witnesses, to each and all of which the court sustained objections—holding that the contract sued on was forbidden by the statutes, under penalty, and therefore void.

The statute, Sec. 180 of the Criminal Code (Hurd's Ed. 1895), in force at the time the contract was made, and now, is as follows:

" Whoever sets up or promotes any lottery for money, or by way of lottery disposes of any property of value, real or personal, or under pretense of a sale, gift or delivery of any other property, or any right, privilege or thing whatever, disposes of, or offers or attempts to dispose of any real or personal property with intent to make the disposal of such real or personal property dependent upon or connected with any chance by dice, lot, numbers, game, haz-

ard, or other gambling device, whereby such chance or device is made an additional inducement to the disposal or sale of said property * * * shall for each offense be fined not exceeding $2,000."

The circuit judge, as shown by the record, appears to have relied upon the cases of Dunn v. The People, 40 Ill. 465; Thomas v. The People, 59 Ill. 160; Lynch v. Rosenthal, 144 Ind. 86 (42 N. E. R. 1103), and the applicability of the law of those cases to the facts of this record. See also Seidenbender v. Charles, 4 Serg. & Rawle, 151; Fleming v. Bills, 3 Oregon, 286.

The writer is inclined to the opinion that the scheme constituted a lottery within the inhibition of the statute, and therefore, although with serious misgivings, concurs in the reasoning and conclusion of the learned trial judge, and also concurs with Mr. Justice Gary, that the judgment should be affirmed for the additional reasons stated in his opinion.

The judgment will be affirmed.

MR. JUSTICE GARY.

I concur in affirming the judgment, but not because there is any lottery in the case. No distribution by lot could take place until all the lots for which any shareholders would give anything for a choice among them were disposed of; then the syndicate interest in the remaining lots, presumably of equal value, would belong to the non-bidding shareholders as tenants in common, and the distribution by lot would only turn an undivided interest in the whole into an exclusive interest in one.

So was the land of Canaan divided among the children of Israel (Joshua, Ch. 14, and following); and so sisters divided at common law. Co. Litt., Sec. 246.

My reason for affirming the judgment is that the appellant never performed his part of the contract.

His declaration avers that he sold fifty lots.

He had no lots to sell; only shares in the syndicate, and until he had sold ninety-six shares, and the lots were distributed, notes and trust deeds made, and, with the cash balance, offered to the appellee, he had nothing to do.

Whether he had good title before such offer was immaterial.

All averments in the declaration as to his want of title, or defects in it, are useless. He need not have title until it should become his duty to convey. Foster v. Jared, 12 Ill. 451; Denby v. Graff, 10 Ill. App. 195.

The declaration does not show that the appellant ever paid the appellee anything. It shows that the appellee acknowledged the receipt of $3,000, not that he received it. The evidence shows that the $3,000 was commission to Robert S. Elder for making the bargain for the appellee with the appellant, which receipt Robert S. gave to appellant to be used as a payment to the appellee, and that Robert S. was to have two-thirds of the profits the appellant might make.

Under such circumstances, if the appellee canceled the agreement with the appellant, as is alleged, the only action the appellant could have would be for damages for breach of the agreement—refusal to go on with and perform it. This action is not for such damages, but to recover the $3,000 as if it were money had and received. The basis of the action is a fiction that the receipt represented money when there was no money.

In an action for breach of the agreement the appellant would be compelled to allege and prove his ability and readiness to perform on his own part.

Whether he could make such proof, this record does not show, but in it is a letter from the appellant indicating that he could not.

MR. JUSTICE WATERMAN.

I think that the contract is not unlawful.