## Jenkins, et al. v. Hamilton.
## Daws, et al. v. Jenkins, et al.

(Decided March 28, 1913.)

### Appeals from Garrard Circuit Court.

1. Specific Performance—Action to Enforce—One Covenanting to Convey Title Must Be Held Bound by Such Undertaking.—Where one covenants to convey the fee simple title to land free from all liens and claims, he must be held bound by such undertaking, even though the purchaser knew at the time all the facts and was of the opinion that he could not carry out the contract.

2. Specific Performance.—It would not be a safe rule to permit one to evade the effect of his failure to carry out his contract by saying that the other party to it knew at the time it was entered into that it could not be carried out.

3. Specific Performance—Contract to Sell Land—Liability for Deficiency—Vendor and Purchaser.—Where one contracts to sell land embraced within certain boundaries, and it afterwards turns out that he cannot make title to all the land so embraced, he is liable to the vendee for the deficiency. The vendee has the right to rely upon the contract obligation of the vendor, and to demand compliance with it as expressed in the deed or bond for title.

4. Specific Performance—One Bound By His Contract.—One must be bound by his contract, and if he makes a contract which it turns out he cannot perform, he must from the very nature of things be held liable therefor.

5. Specific Performance—Liability on Covenant to Convey Land.—It appearing that appellant did not have the character of title that he undertook to convey, he was liable on his covenant for his failure to do so, and in an action against him for specific performance it is not a defense that his intended vendor could not

convey because of defective title, and a demurrer to his rejoinder pleading this defense was properly sustained.

6.  Specific Performance—Failure to Convey—Measure of Damages. —The measure of damages in such a case is the difference between the contract price and the fair and reasonable market value of the land at the time it was to have been conveyed under the contract, if the value is in excess of the contract price.

WM. HERNDON for appellant Jenkins.

R. H. TOMLINSON for appellant, Daws, et al.

W. I. WILLIAMS for appellees, Hamilton & Elliott.

OPINION OF THE COURT BY JUDGE TURNER—Affirming on each Appeal.

On the 26th of March, 1910, C. M. Jenkins, James I. Hamilton and Margaret Elliott entered into a written contract, by which Jenkins undertook to convey to them three tracts of land in Garrard County, one of 77 acres, another of 37 1-4 acres, and a third of 158 77-100 acres.

The last named tract he undertook to convey within thirty days from the date of the contract upon the payment of a certain part of the consideration, and the other two tracts were not to be conveyed until the first of January, 1911. It was provided that the title to all the lands embraced in the contract was to be a good and sufficient fee simple title, and free from any and all claims, encumbrances and liens of every kind. The contract recited that the 158 acre tract was owned by Mattie J. Daws, but was at the time contracted in writing to Jenkins by Mrs. Daws and her husband.

On the 7th day of June, 1910, Hamilton and Elliott instituted an equitable action praying for a specific performance of the contract as to the 158 acre tract, and that Jenkins be compelled to convey the same to them in accordance with the terms of the contract, and praying in the alternative that if specific performance could not be had, for judgment against Jenkins for $5,000.00 in damages. They allege that on April 25, 1910, they tendered to Jenkins the purchase price which under the contract was to be then paid, and demanded a conveyance in accordance therewith, and that Jenkins failed and refused to receive the money, or to convey the land. They further averred that they had been at all times since the contract was made, ready and willing and able to comply with all

of its undertakings upon their part, and that the defendant had failed and refused to convey the land as provided in the contract.

The defendant answered denying that he had failed or refused to receive the money tendered as alleged, or had failed or refused to convey the tract of land as provided in the contract; and alleged affirmatively that he had at the time of the tender referred to, and simultaneously therewith, offered to deliver to the plaintiffs a deed conveying the land to them in full compliance with the terms of the contract, but that the plaintiffs had refused to accept the deed, or pay the money; and alleged further that the plaintiffs had notified him in advance of the time of the tender of the deed that they would not accept the same.

The plaintiffs in their reply allege as a reason why they declined to accept the deed offered which was executed by Jenkins, Mrs. Daws and her husband, that the parties so offering to convey did not have the character of title provided in the contract; and then set forth the following history of the title to the 158 acre tract, to-wit:

That David F. Smith owned the land, and died in the year 1881 testate. That after his death his last will and testament was admitted to probate, and that thereafter his executor instituted an action in the Garrard Circuit Court asking a construction of his will; that said David F. Smith left his widow, Pauline Smith, surviving him, and two daughters as his only children, to-wit: Anna Maria, who was at the time of his death the wife of C. M. Jenkins, and Martha Jemima Smith, then an infant, who has since married B. A. Daws; that shortly after the death of David F. Smith, his wife, Pauline, renounced the provisions of his will and elected to take in lieu thereof what the law allowed her. That in the suit to construe the will, the widow and both children were made parties defendant, and the statutory guardian of the infant defendant, Martha Jemima, was also made a defendant. That in the suit aforesaid allotment of dower to the widow was had, and commissioners duly appointed to divide the real estate between the widow and the two daughters under the will; that there was allotted to the widow a tract of 160 acres for life, and it was provided that at her death 77 acres thereof should go to Mrs. Jenkins, and 83 acres to Martha Jemima; that there was allotted to Martha Jemima a tract of 95½ acres, and that the 158

acres, the title to which is now in question, was embraced in the 95 acres, and the 83 acres. That it was adjudged by the court in that case in construing the will, that under its terms said Martha Jemima Smith took a defeasible fee in all the lands devised to her by her father, and that in case of her death without living issue, the same should revert to Anna Maria Jenkins or to her issue if she should then be dead, and that the lands were accordingly conveyed to her by the Master Commissioner of the Court under the terms of that judgment, and made all the pleadings, exhibits, orders and judgments in the suit to construe the will a part of the pleadings.

They further alleged in the reply that the said Martha J. Smith and B. A. Daws married on the first of January, 1890, she at the time being more than twenty-one years of age, and that on August 29, 1890, said Daws filed an equitable action in the Garrard Circuit Court against his said wife, and Anna M. Jenkins and her husband, C. M. Jenkins, by which he sought a sale of the lands aforesaid, and a reinvestment of the proceeds thereof, and that in that action said Martha J. Daws filed her answer consenting that the same should be done, and a judgment was rendered in that action appointing C. M. Jenkins as the court's commissioner for the purpose of selling the land either publicly or privately, and that acting under said authority, said Jenkins sold the land to himself at private sale for the sum of $10,000.00, and said sale was reported to the court and confirmed; but that no part of the purchase money had ever been paid, and no reinvestment thereof has ever been made. But that thereafter, and on the 28th day of October, 1890, said B. A. Daws and wife undertook to convey the land to C. M. Jenkins while the last named action was still pending, and they allege that the judgment for the sale and reinvestment is still in full force and effect.

They further allege that on the 10th of June, 1902, B. A. Daws and Martha J. Daws, and the said C. M. Jenkins as executor filed in the Garrard Circuit Court an agreed case, and that the three named parties were the only parties to the suit, wherein they sought and attempted to have an interpretation of the will of David F. Smith, and attempted therein to have the land taken by Mrs. Daws under her father's will declared free of all limitations and restrictions, and they say that said suit was without

binding force or effect, and that all proceedings therein were void.

They allege that Anna M. Jenkins died about 1890, and left surviving her several children, who are still alive, and that Martha J. Daws is the mother of several children, some of whom were alive prior to 1902, when the last named suit was filed.

The defendant alleged in his rejoinder that at the time, and before the contract between the plaintiffs and Jenkins was executed and delivered, the plaintiffs knew of the defects, if any, in the title to said Daws land, and knew all about its history prior to that time. The rejoinder further alleges that the court did in that action adjudge, "that the defendant Martha Jemima Smith takes a defeasible fee in all the lands conveyed and willed her; that is the said land in case of her death without living issue will revert to Anna Maria Jenkins, or her issue, if she be then dead." But it is further alleged that at the same term of court, and two days thereafter, the court rendered the following judgment in directing a deed to be made to Martha J. Smith, to-wit:

"It is adjudged that H. C. Kauffman, Master Commissioner of this court, do make a deed of partition herein between said Anna Maria and Martha J., daughters of the said testator. That he do convey unto said Martha J. Smith for and on behalf of Colbey M. Jenkins and Anna Jenkins subject to reversion to the said Anna Maria Jenkins, or her heirs, should she die first, the following tracts of land;" and that the Master Commissioner in accordance with, and in the language of, the last quoted judgment conveyed the land to Martha Jemima.

The court sustained a demurrer to this rejoinder and each paragraph thereof. The case was tried out practically on the single question as to the value of the land at the time Jenkins was to make the deed, and was in effect under the state of the pleadings merely a trial to fix the amount of the damages.

On motion of the plaintiffs an issue out of chancery was granted them, and a jury trial held, and a verdict for $1,400.00 rendered in favor of the plaintiffs, and defendant's motion and grounds for a new trial having been overruled, he appeals.

The judgments entered in the suit by David F. Smith's Executor construing the character of title that

Martha J. Smith took thereunder, no matter how erroneous, were conclusive, not only upon her, but upon all parties claiming through her, whether they were then *in esse* or not; they have neither been reversed, superseded nor appealed from, and after the great laspe of time it is clearly too late to go behind them, or to attempt to evade their effect, and the subsequent suits by the parties looking to that end availed them nothing.

It follows that Mrs. Daws did not have the character of title which Jenkins covenanted to convey to Hamilton and Elliott, and Hamilton and Elliott were not compelled to take the title which was offered them. But it is urgently insisted that the lower court erred in sustaining a demurrer to the defendant's rejoinder wherein he alleged that Hamilton and Elliott before and at the time of the execution of the contract of March 26, 1910, knew all about the character and kind of title which Mrs. Daws had in the 158 acre tract, and knew all about the proceeding in court, and the interpretation of the will of David F. Smith, and that they, for that reason were aware that neither Jenkins nor Mrs. Daws could make them the character of title to the 158 acre tract which Jenkins had covenanted in the contract to make, and for that reason it was a mere speculative venture upon the part of Hamilton and Elliott and not enforcible in law.

But we cannot concur in this view; Jenkins positively covenanted to convey to them within thirty days the fee simple title to the 158 acre tract free from all liens and encumbrances or claims, and he must be held bound by such undertaking, even though Hamilton and Elliott at the time knew of all the facts, and were of the opinion that he could not carry out that contract. It would not be a safe rule to permit one to evade the effect of his failure to carry out his contract by saying that the other party to it knew at the time it was entered into that it could not be carried out. To so hold would be to point out a plain avenue of escape in many cases from one's solemn contract obligations.

Hamilton and Elliott, even though they may have known of the condition of the title to the 158 acre tract, had an absolute right to rely upon Jenkins' covenant that he would convey it to them; and it was not their duty to inquire into the manner or method by which he was to do so. The case of Foute v. Elder, 109 Ga., 713, was one where Foute had in a bond for a title sold to Elder a lot

in the city of Atlanta 64 ft. in width and 160 ft. in depth; but it turned out that before the contract he had dedicated 17 feet off of the rear of the lot to the city for a street, and in an action by Elder on the bond, he plead that this fact was known to her when she entered into the contract of purchase, and that therefore he was not liable for his failure to convey the same; but the court in answer to that defense said:

"Wherever one contracts to sell the land embraced within certain boundaries or measurements, and it afterwards turns out that he cannot make titles to all of the land embraced within those boundaries and measurements, he is liable to the vendee for the deficiency. This is true although the vendee knew or ought to have known that the vendor had, before making the bond, disposed of a portion of the tract. The vendee has a right to rely upon the warranty or the contract obligation of the vendor and to demand compliance with the contract as expressed in the deed or bond for titles. This is no new doctrine in this court. In the case of Smith v. Eason, 46 Ga., 316, it was said: "A deed or bond for titles to a tract of land by its number in the state survey binds the obligor to make title to the land within the boundaries of such survey, and if a part be sold off before the date of the deed, this is a breach of the bond, nor is this breach excused by the fact that the quantity sold off is small, and the bond describes the number, containing two hundred and two and one-half acres, more or less. Proof that the obligee in a bond for titles knew that the obligor was not the owner of the whole of the land described in the bond is no reply to a plea of a breach, unless it appear that there was a mistake in the description." This case was followed in Miller v. Desverges, 75 Ga., 407, and again in Godwin v. Maxwell, 106 Ga., 194."

In the case of Junk v. Barnard, 99 Ind., 137, it was held that the defendant who had executed a bond for a title was liable on his covenant to make a warranty deed even though he had never seen the land, and even though the plaintiff knew at the time he executed the bond that he had no title to it. In other words, men must be bound by their contracts, and if they make contracts which it turns out they cannot perform, they must from the very nature of things be held liable therefor.

So we conclude that it appearing that neither Jenkins nor Mrs. Daws had the character of title to the 158 acre

tract which Jenkins undertook to convey to Hamilton and Elliott, he was liable on his covenant for his failure so to do.

The court properly instructed the jury that the measure of damages was the difference between the contract price and the fair and reasonable market value of the land on the day it was to have been conveyed under the contract, if the value was in excess of the contract price, and further, that if the value and the contract price was the same on that day, they could find for the plaintiffs only nominal damages for the breach of the contract.

Pending the action between Hamilton and Elliott and C. M. Jenkins, Mrs. Daws and her husband with their five children filed a petition to be made parties, which they made a cross petition against the children of Mrs. Jenkins, and sought to have corrected the alleged errors in the old record to settle the estate of David F. Smith, and averred that all the orders and judgments therein made were void and sought to have it so adjudged in this action. But the court, upon motion of Hamilton and Elliott, struck out that pleading, and declined to permit them to become parties to this litigation, and from this action of the court they appeal.

These parties were not proper parties to any action between Hamilton and Elliott and Jenkins and they could not engraft their action against the Jenkins heirs on to this action between Hamilton and Elliott and C. M. Jenkins.

It would seem that the words, "without living issue" embraced in the judgment of February 2nd, 1882, were inadvertently left out of the judgment of the 4th of February, 1882, and the deed made in accordance therewith, and that their omission was a mere clerical error which may be corrected in a proper proceeding; but the court properly refused them the right to have it done in the action between Hamilton and Elliott and Jenkins.

The judgment on each appeal is affirmed.