## Nolan v. Highbaugh, et al.

(Decided November 21, 1922.)

### Appeal from Harlan Circuit Court.

1. Vendor and Purchaser—One May Make a Valid Contract for Sale of Property Though he Have no Title to it.—One may in writing signed by himself and vendee, make a valid contract for the sale of real property, though he has no title, or an imperfect title to the property when the contract is made; and if he subsequently and within or by the time fixed by the contract for its performance, acquires title to the property, or, in case of a defect in the title, removes it, he will be bound to perform the contract in accordance with its terms and the same would be true of the vendee's performance of the contract.

2. Vendor and Purchaser—Where Vendor Fails to Acquire Title He is Responsible in Damages.—The fact that the vendor, after contracting a sale of real property to which he at the time had no title, fails to acquire the title before or by the time fixed by the contract for its performance, will not relieve him of liability upon the contract. While in such state of case he cannot, because of his failure to obtain title thereto, be made by a court of equity to specifically perform the contract by conveying the vendee the property as required by its terms, he nevertheless would be responsible to the vendee for the damages he would sustain from his (the vendor's) breach of the contract, an action for which would be the remedy available to the vendee.

3. Specific Performance—The Fact that Title Had Not Been Acquired Does Not Render Sale Invalid.—As in the case here presented the title to the real property contracted by the appellant to the appellees, though not owned or held by him at the time the contract was made, was admittedly acquired by him within the time fixed by it for its performance, and the willingness and ability of the appellees to comply with its terms by the cash payment of the agreed consideration for the property was also admitted, the defense of the appellant that as he had not consummated a contract with the former owner of the property for its purchase when or before he contracted its sale to the appellees, that fact rendered the latter sale invalid, was properly rejected by the chancellor, whose judgment requiring of him a specific performance of the contract justly determined the rights of the parties.

CLAY & CARTER, O'REAR & FOWLER and J. W. HOWARD for appellant.

HALL, JONES & LEE for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This litigation arose out of the purchase by the appellees, H. W. Highbaugh and F. D. Perkins, from the appellant, J. W. Nolan, of a house and lot situated in the town of Harlan, this state, the contract of sale being evidenced by the following writing:

"This agreement and contract made and entered into by and between J. W. Nolan of the 1st part and H. W. Highbaugh and F. D. Perkins, parties of the second part, all of Harlan, Kentucky, this 25th day of September, 1919, witnesseth: Agreed that parties of the second part will pay to J. W. Nolan thirty-six hundred (3,600.- 00) for the house and lot opposite the Kelly Hotel, now occupied by the Kelly Hotel as sample room, just as soon as said Nolan obtains deed and title to same from

J. W. Greaver, the present owner. Agreed that the said Nolan will make this transfer and conveyance just as soon as he obtains title and deed from said Greaver. Agreed that the consideration will be cash.

"(Signed) J. W. NOLAN,
H. W. HIGHBAUGH,
F. D. PERKINS."

On October 11, 1919, the appellant received from J. W. Greaver a deed of general warranty conveying him the house and lot in question, and on that day following its delivery, the appellees offered to pay and tendered to the appellant in lawful currency the $3,600.00, expressed in the contract of sale as the purchase price of the property and at the same time demanded of him a deed of conveyance to same in accordance with the terms of the contract of its sale by him to them. The appellant refused, however, to accept the money tendered or execute the deed, and thereafter persisted in such refusal, in consequence of which this action seeking a specific performance of the contract in question was brought against him by the appellees in the court below.

The petition as amended alleged substantially as above recited, the facts respecting the contract of sale and its terms and properly alleged its breach by the appellant, whose answer admitted the latter fact, but attempted to justify it and his resistance of the enforcement of the contract upon the alleged ground that when it was made he had not consummated a contract with H. W. Greaver, the former owner of the house and lot, for its purchase and therefore had not then acquired title to the property, which fact rendered invalid and unenforcible the contract for its sale made by him with the appellees. The affirmative matter of the answer was controverted by reply. Thereafter the appellees filed a second amended petition, setting up the marriage of the appellant after the institution of the action and making the wife a party defendant, who was later duly summoned as such. Following the taking of the proof by the parties and submission of the case, the chancellor granted the prayer of the petition by specifically enforcing the contract. The appellant's complaint of the judgment entered in pursuance of this ruling, resulted in the granting of this appeal and his prosecution of same.

. It will be seen from what has been said that it is the contention of counsel for appellant that at the time of entering into the contract with the appellees the appellant had not purchased of Greaver the house and lot he contracted to the appellees, and theretofore then had no interest in the subject matter of the contract; and that a sale of real property in which the vendor has neither legal nor equitable title at the time it was made is unenforcible.

Without now stopping to determine whether the fact assumed in the appellant's above contention, viz., that the appellant had not purchased from the former owner the property in question when he entered into the contract for its sale to the appellees, is or not established by the evidence, we have duly considered the proposition of law, based on that assumption, presented by the contention, and are constrained to declare it unsound, for it has expressly been so declared in several cases decided by this court and also seems to have been so held by the weight of authority in other jurisdictions. We find the rule governing such contracts as that here involved stated in 39 Cyc, 1317, as follows:

"While contracts for the sale of land may apply to property or an interest in or title thereto to be subsequently acquired, they will ordinarily, unless a contrary intention clearly appears, be construed as having reference to the title and interest of the vendor at the time of the contract and not to such as may be subsequently acquired."

Again at page 1529, same volume, it is further said on the same subject:

"In general unless there is some agreement to the contrary, the vendor need not have a good title, or any title at all, nor need the land be free from encumbrance at the time the contract is made, but it is sufficient, provided the contract is made by him in good faith, if he has such an interest in the subject matter of the contract, or he is so situated with reference thereto, that he can convey a good title free from encumbrances at the time of performance. . . . "

The first paragraph from Cyc, *supra,* is supported by the case of Fleming v. Harrison's Devisees, 2 Bibb 171, cited and commented on in a footnote of the same page. In that case it was held that where a vendor covenanted by title bond to convey 400 acres of land located along a certain stream, upon his obtaining it from the

Commonwealth, and he subsequently acquired by patent from the Commonwealth two different tracts of land on such stream, it was then completely within his power to perform his covenant by conveying by proper deed the 400 acres of land to the vendee, which he must do; but that as he had acquired by patent from the Commonwealth two tracts of land on such stream, he had the right of election to convey the stipulated number of acres to the vendee out of either tract. As the case, *supra,* was decided in 1810, it may well be said that the doctrine declaring that the validity of a contract for the sale of real estate does not depend upon the vendor's ownership of a legal or equitable title to the property at the time of the making of the contract of sale, is of ancient origin in the jurisprudence of the state.

No case decided by this court since that of Fleming v. Harrison's Devisees, *supra,* will be found to conflict with the doctrine therein announced. On the contrary, other cases subsequently decided, such as Tapp, etc. v. Nock, 89 Ky. 414, and Smith, etc. v. Causler, 83 Ky. 367, though arising out of dissimilar facts, give it full recognition. In the first of these cases it was held that a vendor who undertakes to make a good title and give a general warranty deed, does not undertake that he has the legal title, and is entitled to a reasonable time in which to perfect his title and make a deed; and in the second case it was held that the inability of the vendor to make a good title at the time of the contract, or at the time agreed upon for performance, will not entitle the vendee to a rescission, the vendor's title being subsequently made perfect; and even though the vendor is not able to comply with his contract when the suit for rescission is instituted, yet if he can perfect the title within a reasonable time, the court will give him an opportunity to do so.

In the more recent case of Jenkins v. Hamilton, etc., 153 Ky. 163, we held that one must be bound by his contract, and if he makes a contract he finds himself unable to perform, he nevertheless will be held liable for its breach; and, furthermore, that if he covenants to convey the fee simple title to land free from all claims and liens, he must be held bound by such undertaking, even though the purchaser knew at the time all the facts and believed him unable to carry out the contract. This the opinion declared essential because: "It would not be a safe rule to permit one to evade the effect of his failure

to carry out his contract by saying that the other party to it knew at the time it was entered into that it could not be carried out. To so hold would be to point out a plain avenue of escape in many cases from one's solemn obligations.''

The conclusions thus expressed in the opinion of the case, *supra,* are supported by the cases of Fonte v. Elder, 109 Ga. 713; Miller v. Deoverges, 75 Ga. 407; Goodwin v. Maxwell, 106 Ga. 194, and Junk v. Barnard, 99 Ind. 137.

In view of the decisions of this court cited above it is at least safe to say that it is a well settled rule of law in this jurisdiction that one may, in writing, signed by himself and vendee, make a valid contract for the sale of real property, though he has no title, or an imperfect title, to the property when the contract is made; and if he subsequently and within the time fixed by the contract for its performance, acquires title to the property, or in case of defects in the title removes them, he will be bound to perform the contract in accordance with its terms and may be compelled to do so, and the same would be true of the vendee. It will also be found from an examination of the following additional cases decided in other jurisdictions that they maintain the doctrine stated: Kirby v. Cartwright, 48 Texas Civ. App. 8; Jones v. State, 100 Ala. 209; Harris v. Carter, 3 Stew. 233; Yates v. Pryor, 11 Ark, 58; Burks v. Davis, 85 Cal. 110; Andrew v. Babcock, 63 Conn. 109; Elder v. Chapman, 70 Ill. App. 288; Smith v. Green, 197 Mass. 16; Greenspan v. Saladino, 126 N. Y. App. Div. 331; Lockridge v. Coles, 72 Minn. 57.

The fact that the vendor, after contracting a sale of real property to which he at the time has no title, fails to acquire the title before or by the time fixed by the contract for its performance, will not relieve him of liability upon the contract. While in such state of case he cannot, because of his failure to obtain the title thereto, be made by a court of equity to specifically perform the contract by conveying the vendee the property as required by its terms, he nevertheless would be responsible to the vendee for the damages he would sustain from the breach of the contract, an action for which would be the only remedy available to the latter. In the case at bar, however, there was no obstacle in the way of the specific performance of the contract required of the appellant by the judgment of the chancellor, as he admit-

tedly had obtained by a proper deed of conveyance from his vendor a sufficient title to the house and lot fifteen days after its sale by him to the appellees, and on the same day admittedly received a tender from the latter of the $3,600.00 they had agreed to pay him for the property, which tender was, as also admitted by the appellant, accompanied by a demand from them that he make them a deed to the property as stipulated by his contract with them. Clearly these facts brought the case within the rule of law stated, entitling the appellees to the relief granted by the court below.

Our examination of the cases from this court cited by counsel for appellant fails to convince us that they sustain their contention. Such of them as hold invalid and unenforcible a contract of sale for real estate where the vendor is without title or interest at the time of making the contract, seem to be cases in each of which the sale was made by an heir at law of his supposed interest or mere expectancy in the estate of a parent or other relative from whom there was a possibility of his inheriting it. But such sales are placed by the law in a distinct class and condemned by it because they are contrary to and violative of the public policy of the state and for that reason declared void and unenforcible.

If right in the conclusion we have expressed in regard to the law of this case decision on the issue of fact as to whether the appellant had contracted with the former owner of the property in controversy for its purchase before his sale of it to the appellee, would seem unnecessary. However, as to that issue we feel it our duty to hold it is fairly apparent from the weight of the evidence that the appellant had prior to his sale of the property to the appellees fully contracted with Greaver for its purchase at the agreed price of $3,500.00, with a rebate of $50.00, with which to buy himself a suit of clothes promised him by Greaver if he would himself buy the property, or procure a purchaser for it at the price of $3,500.00, and the $50.00 promised him by Greaver was received by appellant in a check from Greaver accompanying the delivery to him of the deed conveying him the house and lot. Greaver testified that the sale of the house and lot was made by him to appellant before the latter contracted it to the appellees, and both Greaver and the appellee Highbaugh testified that he (Greaver) so advised Highbaugh before the latter and Perkins contracted with appellant for the property.

It is further apparent from the evidence that the appellees contracted with the appellant for the property in the belief that he had closed with Greaver a contract for its purchase, which belief arose not only from the advice of Greaver given them to that effect, but also out of the conduct if not the assurance of the appellant at the time the contract between them was made. It is true the appellant testified that his contract with Greaver was made after he (appellant) contracted the house and lot to the appellees, and as evidence of this he filed with his deposition two or more telegrams to Greaver dated after his sale of the property to the appellees. These telegrams, however, do not claim that he had not previously closed his trade with Greaver for the property nor did they advise him of his having sold it to appellees, but manifest merely a persistent effort, that characterized his conduct both before and after his sale of the property to appellees, to obtain a reduction of the price he had already agreed to pay Greaver for it. He did not file with his deposition or offer in evidence the telegram or letter from Greaver accepting him as a purchaser of the property. On the whole we are inclined to give the greater weight to the evidence in behalf of the appellees.

After all is said, the appellant profited by his deal in the property to the extent of $150.00, which fairly compensated him for the trouble he incurred in putting over the transaction, none of which is material, however, to the decision of this case, as under the law the validity of his contract for the sale of the property to the appellees did not depend upon his having previously acquired a legal title or other right to it.

Judgment affirmed.