## Struck v. Dralle.

(Decided May 17, 1929.)

394

T. A. LUMAN for appellant.

BLAKEY, DAVIS & LEWIS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and prior to July 15, 1927, appellant and plaintiff below, Robert N. Struck, owned an apartment house or flat, with the lot upon which it was situated, at No. 1919 Avery court in the city of Louisville, Ky., which he valued at the sum of $26,000. The appellee and defendant below, C. A. Dralle, and Dr. E. A. Bates and Dr. Forrest Gabbert, jointly and equally held title to a vacant lot at the southeast corner of Bardstown road and Eastview, which they valued at $13,500; but defendant advanced all the cash consideration for that lot except $200 and took notes of his two joint owners for their respective portions. They acquired it for speculative purposes only. Being vacant, it was paying no dividend and all the owners were anxious to sell it, but had been unable to do so at a profit. Indeed, they had been unable to receive for it the amount of their investment, which they were willing to but could not do. Prior to the day men-

tioned, plaintiff had listed his property at Avery court with George B. Catlett, a real estate agent in the city of Louisville, and the owners of the vacant lot on Bardstown road had listed it with C. Robert Peter & Co., who were also realtors in the same city, and G. A. Tomlinson was in their employ as an agent and representative. Mr. Tomlinson did not know plaintiff, much less did he represent him in any capacity, nor did he see or in any wise communicate with him during any of the transactions hereinafter mentioned.

Upon, or a few days prior to, the date mentioned, Tomlinson and Catlett met and tentatively agreed to an exchange of the two properties respectively, valued at the sums stated, and also upon the manner, time, amounts of payments, and other terms, including assumptions of liens, etc., and in accordance therewith Tomlinson prepared a written proposition wherein defendant agreed to the terms of exchange of the two properties as incorporated in that writing prepared as if he was the sole owner of the vacant lot on Bardstown road, and after signing it he delivered it to Tomlinson, who delivered it to Catlett, and he in turn submitted it to plaintiff, who accepted it in writing within the time prescribed therein. No mention was made therein of the fact that Drs. Bates and Gabbert were joint owners with defendant in the Bardstown road lot, and it is uncontradictedly established in the record that neither plaintiff nor his agent, Catlett, possessed any actual knowledge of that fact. Within a reasonable time after the contract had been so completed by plaintiff accepting the written proposition of defendant, the former demanded performance by execution of deeds in conformity with the contract, but defendant declined in writing to do so, and which was thus stated by him: "The lot which is a part of this contract is not my personal property and my partners after my signing this contract, decided to hold the lot. Therefore you see readily I am not able financially to entertain such a deal which involves more funds than I have." That declination was written to plaintiff's attorney in response to a letter of the latter to defendant requesting performance. Following that, plaintiff filed this action in the Jefferson circuit court against defendant for the recovery of damages for refusal to perform the contract, which he fixed in his petition at the sum of $2,000, but later increased it by amendment to $10,000.

The answer denied the material averments of the petition, except it admitted the signing of the written contract by defendant; and it also contained the affirmative allegation that defendant signed the proposition upon the condition that it was not to be delivered to plaintiff for acceptance until it was also signed by his two joint owners, Drs. Bates and Gabbert, and that it having been delivered and accepted by plaintiff in violation of that condition defendant was not bound thereon, it being also averred in the answer that plaintiff had knowledge of such conditional signing and delivery to the representative of his real estate agent, and having such knowledge plaintiff could not enforce the contract as against defendant, nor could he recover damages for his failure to perform it. Proper pleadings made the issues, and upon trial the jury under the instructions submitted to it by the court returned a verdict for defendant, to reverse which plaintiff prosecutes this appeal.

If the written proposition, signed only by defendant, was upon condition that it was not to be binding or to be accepted by plaintiff until it was also signed by the other two joint owners of the vacant lot on Bardstown road, *and plaintiff had knowledge of that fact before he accepted it either* personally or through his duly constituted agent, then there can be no doubt but that the defense would be available, and the fact of such conditional signing might be established by parol proof, since it is settled in this jurisdiction that such proof does not violate the well-established rule against modifying written contracts by parol testimony of prior or contemporaneous transactions. It was so held by us in the cases of Caudle v. Ford, 72 S. W. 270, 24 Ky. Law Rep. 1764; Vance v. Dodson, 205 Ky. 640, 266 S. W. 368; Lincoln v. Burbank, 218 Ky. 89, 290 S. W. 1081; and others referred to in those opinions. See also the text and notes in 22 C. J. pp. 1148 and 1156, secs. 1540 and 1548. On that issue defendant testified to his conditional signing of the written proposition of exchange, but only with his own agent, Tomlinson, and which occurred in his drugstore in the city of Louisville, Ky., with no one present except himself, Tomlinson, and a clerk. The latter in a way attempted to corroborate defendant on that point, but the corroboration was meager and clearly unsatisfactory. Tomlinson positively denied it; but as we view this case, the fact that there was such a conditional signing would not operate to release defendant, *unless plaintiff possessed the requisite know-*

*ledge thereof,* and, we repeat, there is no testimony in the record that he possessed any actual knowledge but only urged constructive knowledge to be hereinafter referred to.

The fact that defendant was not the sole owner of the property he proposed to exchange would not relieve him from the obligation to respond in damages for failing to perform his contract, although plaintiff may have known that defendant was not the sole owner of the property, but in support of which latter fact there is no testimony in the record. The identical point was so determined by us in the case of Jenkins v. Hamilton, 153 Ky. 163, 154 S. W. 937, and others therein referred to.

In the written proposition signed by defendant and accepted by plaintiff there was this stipulation: "Each seller will pay the regular commission prescribed by the real estate board of Louisville, Kentucky." And real estate agents, including Tomlinson and Catlett, testified that according to the regulations of the real estate board of Louisville, agents representing different clients where the respective properties were exchanged, shared equally in the joint commissions, and it is argued by defendant's counsel (and which view the court accepted and so instructed the jury) that such an arrangement made each of the real estate agents a representative of both owners of the exchanged properties, and from that premise it is also argued, and cases are cited in support thereof, that notice to one who is agent for both parties in a transaction is notice to each of them, and which may be accepted as a sound legal principle; but, necessarily, before that principle should be applied it should be shown that the joint agent was acting for both parties. The only method or reasoning by which that fact is sought to be established in this case is because of the rule or regulation supra of the real estate board of real estate agents in the city of Louisville, Ky., with reference to the divisions of commissions in cases like this. But, when analyzed, that regulation amounts to no more than an arrangement between real estate agents for their mutual benefit and profit and does not affect the rights of their clients so as to give it the force and effect insisted upon by learned counsel for defendant, and which was adopted, as we have said, by the trial court. To so hold would be to sanction the right of an agent, by an arrangement between him and a stranger third party, entered into for only their mutual joint benefit, to constitute the latter the agent of

398

the principal without his knowledge or consent and to burden him with all the consequences, as to notice, etc., because of such additional and newly created agent, about the selection of whom he was not consulted or as to the employment of whom he had no knowledge. We know of no approved principle of law supporting that doctrine. It is not in harmony with the underlying principles of the law with reference to "Principal and Agent," and we are unwilling to accept it as forming a part thereof.

That being true, there is no proof in this case that plaintiff possessed any knowledge at the time he accepted defendant's written proposition of the alleged conditions upon which it was signed by him, and without such knowledge defendant, as we have seen, should respond to plaintiff in whatever damages he sustained because of the refusal of defendant to carry out the contract. The court therefore erred in overruling plaintiff's motion to instruct the jury to find for him in an amount measured by the difference, if any, between the actual market value of the Bardstown road lot at the date of the contract, and the amount plaintiff agreed to pay for it. The court also erred in instructing the jury as hereinbefore indicated.

For these reasons the judgment is reversed, with directions to grant the new trial, and for proceedings consistent with this opinion.