# Krauth et al. v. Krampp et al.

(Decided March 11, 1930.)

LAWRENCE S. GRAUMAN for appellants.

BLAKEY, DAVIS & LEWIS and AL M. MARRET for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

George Krauth, who owned real estate on South Clay street in Louisville, devised a one-half undivided interest therein to each of his two sisters, Catherine Krauth and Malinda Krauth, and thereafter the Louisville Trust Company held and managed the property as executor of George Krauth and agent of the two devisees. On their death the two devisees, who were never married, each left a will by which she devised her undivided one-half interest in the property to her sister Amelia Krampp, but between the execution of their wills and their deaths the property was sold and the proceeds of the sale, amounting to about $2,700, were held by the Louisville Trust Company, first as their agent and thereafter as their

executor. After the death of Catherine and Malinda Krauth, a dispute arose between Mrs. Krampp and her three nephews, Gustav, Charles, and Henry Krauth, as to whether or not the proceeds of the sale of the Clay street property passed to her under the wills of her sisters Catherine and Malinda. If it did not pass under the wills, it passed by descent, one-third to Mrs. Krampp, one-ninth each to Gustav, Charles, and Henry Krauth, Jr., and one-ninth each to Gertrude Gernert, Herbert K. Walton, and Herbert Kraft.

On December 1, 1927, the Louisville Trust Company, as executor of the estate of Catherine Krauth, and as exe-cutor of the estate of Malinda Krauth, brought suit against their devisees and heirs for the purpose of set-tling their estates and obtaining an adjudication on the question of ademption. During the month of March, 1928, a compromise agreement was entered into between Amelia Krampp on the one hand, and Gustav, Charles, and Henry W. Krauth on the other hand. The agree-ment recited the dispute and the fact that the parties had agreed on a settlement as to the disposition of the pro-ceeds of the sale of the property. It then authorized and directed the Louisville Trust Company, as executor of the two estates, to pay out of the proceeds of he sale of said property and the accrued interest thereon to Amelia Krampp $2,000, and to Gustav, Charles, and Henry W. Krauth, jointly, $700, and added, ''and in consideration of the payment of said sums, the said Amelia Krampp, Gustav Krauth and Henry W. Krauth, do hereby release any further claims they have in and to said proceeds, and accept said sums in full satisfaction, release and compromise of all claims they have or may have to said property and the proceeds of the sale thereof.'' It was further agreed that the estate of each of the sisters should bear one-half of the payments, and that the action theretofore brought by the Louisville Trust Company, executor, against Amelia Krampp and others, should be dismissed. On December 12, 1928, Gustav A., Charles, and Henry W. Krauth filed their answer, counterclaim, and cross-petition setting up the compromise agreement, and asking that it be enforced according to its terms. To this pleading Amelia Krampp filed an answer denying the validity of the compromise agreement, and pleading in substance that the agreement was not to become effec-

tive until and unless approved by her attorney, Leon P. Lewis, and that he refused to approve the settlement. The chancellor did not pass on the question whether the agreement was delivered on condition that it should be approved by Mrs. Krampp's attorney, but dismissed the cross-petition on the ground that the compromise was not valid. The cross-petitioners appeal.

The chancellor held the compromise invalid on the ground that Gertrude Gernert, Herbert K. Walton, and Herbert Kraft, the nonresident heirs who would take one-ninth each in case the fund in dispute passed as intestate property, were not parties to the agreement and that the remaining heirs were without power to dispose of the fund and the contract was lacking in mutuality. In this view of the case we are unable to concur. The attorney representing the executor of Catherine Krauth and Malinda Krauth was at first inclined to the opinion that the sale of the Clay street property operated as an ademption, and that the proceeds passed to all the heirs of Catherine and Malinda Krauth; but on a more thorough examination of the question, he came to the conclusion that there was no ademption and so stated to Gus Krauth, who replied that he and his brothers wanted the question tested. In view of their attitude the suit was brought. The executor was willing to distribute the money provided the matter was adjusted between Mrs. Krampp and her three nephews, Gustav, Charles, and Henry Krauth. The three nephews were willing to take less than they would receive had there been an ademption. To that extent only Mrs. Krampp and the three nephews were concerned. The contracting parties did not attempt to bind the heirs who were not parties. The legal effect of the agreement was simply that so far as the contracting parties were concerned the case would be settled by the payment of $700 to the three nephews and $2,000 to Mrs. Krampp, and we perceive no reason why the contract is not binding as between the parties. But the case is all the stronger. The record discloses that the nonresident heirs, Gertrude Gernert, Herbert K. Walton, and Herbert Kraft, entered their appearance to the action and stated that they desired Mrs. Krampp to have the property in question. These communications were written some time before it was sought to enforce the compromise agreement. Therefore,

at the time the matter was before the chancellor, the only persons who had even a remote semblance of right to complain of the compromise had acquiesced in its terms, and there was no reason for declaring the compromise invalid on the ground that they were not parties to the agreement.

It remains to determine whether the compromise was conditioned on the approval of Mrs. Krampp's attorney. If so, it never became effective as such approval was refused. Struck v. Dralle, 230 Ky. 393, 20 S. W. (2d) 88, 89; Lincoln v. Burbank, 218 Ky. 89, 290 S. W. 1081; Pickrell v. Wilson, 199 Ky. 20, 250 S. W. 135. The record discloses that the settlement of the estates of Catherine and Malinda Krauth, involving about $30,000, was held up because of the dispute concerning the item in controversy, and that Mrs. Krampp was very anxious to have the matter adjusted. With this end in view her daughter went to the vice president of the trust company and was referred to Mr. Marret, who brought the suit and represented the executor. Thereafter Mrs. Krampp and her daughter went to see Mr. Marret, who prepared the contract purely as a matter of accommodation. After it was signed by Mrs. Krampp, it was transmitted to her nephews, who also signed. The three Krauths testified that nothing was said about the contract being approved by Mrs. Krampp's attorney. Mrs. Krampp and her daughter say that she signed the agreement if agreeable to her attorney. The material portions of Mr. Marret's testimony are as follows: After some negotiation between the parties, the Krauths agreed to take $700. Afterwards Mrs. Krampp and her daughter came to his office and said they would rather pay and get 'rid of it; that they did not want to go to court. He said: "This is your matter, and I want you distinctly to understand that it makes no difference to me what agreement you and the Krauth boys make, I am going to submit it to Leon Lewis. It will have to be subject to his approval so far as I am concerned." After they told him they were willing to accept the $700, he drew up the papers, consisting of the original and two extra copies. Mrs. Krampp signed the paper. He then put it in an envelope and mailed it to Gus Krauth. Later on the paper was returned to him. Afterwards he met Mr. Lewis, who said that the compromise was not agreeable to him and his clients. He then said: "Leon, I would not have con-

sidered the handling of this matter in your absence if your client had not insisted upon it and if I had not thought that probably a settlement could be had by reason of the fact that you had told me you would not be adverse to a compromise on some reasonable basis and the thing disposed of since it was a family matter and on account of a possible breach in the family.'' He was unwilling to advise the trust company to pay the money to Mrs. Krampp without a suit to protect them. On being asked if he told Krauth that this matter was subject to the approval of appellee's attorney, Mr. Marret said: ''Here is exactly what happened about that. I told Gus and Henry Krauth in view of the fact that you represented Mrs. Krampp I felt we were called on to get your approval of the thing. They said 'she is the one making this proposition, we haven't come around and made any proposition. We are twenty-one years of age and she is twenty-one years of age, and if she can make a contract we don't see what her attorney has to do with it.' I said, 'That is true, she can make a contract and I have explained everything to her fully. It does not make any difference to me except that I am not going to allow this thing to be consummated and the money paid over by the Trust Company until Leon Lewis is at least notified about it. I feel as a brother attorney that it is my duty to do that.' '' On being asked under what condition and in what capacity he held the contract afterwards signed, he said:

''I was really acting as a 'go-between.' I was not representing Mrs. Krampp and I was not representing these boys but I did make it pretty clear that it didn't make any difference what agreement they made I was going to submit it to you before the Trust Company acted on it. I never submitted it to the Trust Company because after you came back you said it did not meet with your approval.

''16. You did not consider it was completely delivered? (Question objected to and not answered.)

''17. While the document was in your hands and before I approve of it, state whether or not you considered it was delivered for the purpose of becoming effective? (Question objected to by counsel for Krauths.) A. Here is the way I considered it. There is absolutely no question about Mrs. Krampp's will-

ingness to settle this thing but I was not going to allow it to be done or turned over to the Trust Company until I had notified you about it.''

On cross-examination Mr. Marret testified as follows:

"18. When Mrs. Krampp or her daughter came into your office and this agreement was signed by them in triplicate they read it over very carefully? A. I don't know whether I read it to them or handed it to them and they read it but anyway, it was either one way or the other.

"19. You were attempting to effect a full and complete settlement as far as the controversy? A. No, sir, I was not attempting to effect anything.

"20. To reframe my question: Did I understand it was the intention of the parties to effect a full and complete settlement so there would be no further controversy over the money? A. I drew the agreement so that the Trust Company, the Executor would be fully protected in the matter. All I was doing was to put in writing what the parties were undertaking to agree to.

"21. You then put it in an envelope and mailed it to Gus Krauth without a letter? A. My recollection is I mailed him the original and two carbon copies and I think I may have talked to him over the telephone. I remember distinctly not sending any letter with the writing and I may have told him over the telephone I wanted two copies signed and returned to me.

"22. Thereupon the two copies were signed and returned to you? A. Yes, sir, and, by the way, I have not either of those copies.

"23. Mrs. Krampp and her daughter were rather persistent in trying to get this matter settled? A. I have detailed as near as I can, the conversations that happened there when they came and said they didn't want to go to Court and wanted to get it settled and all that and when I explained to them my attitude in the matter that I didn't represent them and didn't have any authority to handle the matter and that Mr. Lewis was her attorney, Mrs. Krampp and her daughter both said their attorney was busy and they would really like to get it settled

and I said 'well, I talked to your attorney about settling the matter and he did say he might get the matter settled if it could be settled for some reasonable sum but what he considered a reasonable sum, I don't know.' They said, as I recall, Miss Kramp said her mother was worried and they would like to get it out of court and I said 'whatever you do, I am going to submit it to Mr. Lewis.'

"24. Did they request you not to do anything without getting Mr. Lewis' approval? A. No, sir.

"25. Did they tell you Mr. Lewis was out of town and that is the reason why they didn't get him to take the matter up? A. No, they didn't say anything about not getting him to take the matter up because he was out of town. I know that something was said about Mr. Lewis being out of town at the time and they said something about Mr. Lewis being busy and they didn't know why it was hanging so long.

"26. Was this settlement thoroughly satisfactory to them at that time? A. I would not have prepared a paper and have them sign it if it had not been but I want you to understand that even after she signed it, I told her if the boys sign it, whether she wanted me to do it or not, I was going to submit it to her attorney.

"27. Did she want you to submit it to her attorney? A. She said she thought it would be all right with her attorney and I didn't take it up with the Trust Company until after Mr. Lewis came back.

"28. (By Mr. Lewis) She did not in any way ask you not to submit it to me? A. No, sir. She didn't ask me not to submit it to you, she did say she felt you would be satisfied with what she did and I said 'he is your attorney and you should advise with him about it.' 'There are only two reasons I am taking it up, the first because this is a family matter and the second, because I have talked with Mr. Lewis about a settlement and he indicated that a settlement might be had.' "

To sustain the defense it was necessary to show that Mrs. Krampp on the one hand, and the Messrs. Krauth on the other, or some one having authority to represent them, agreed that the compromise was

not to become effective until approved by her attorney, or that she signed the compromise on that condition, and that before the Krauths executed the contract the condition was communicated to them or their agent, and acquiesced in by them. We accept as true Mr. Marret's testimony. When carefully analyzed, it discloses the following situation: Mrs. Krampp was anxious and willing to settle the matter, but Mr. Marret was unwilling to carry out the agreement so far as he and the trust company were concerned unless it was approved by Mrs. Krampp's attorney, and so stated to Mrs. Krampp perhaps before she signed the agreement, and also to the Messrs. Krauth; but whether before or after they signed does not appear. In other words, the only person attaching any condition to the contract was Mr. Marret, who represented the executor and not the parties, and who took that position solely for the protection of his client and out of courtesy and consideration for a fellow attorney. The case is not strengthened by the evidence of Mrs. Krampp and her daughter, who merely stated that Mrs. Krampp signed the agreement "if agreeable to her attorney." They do not claim to have made any agreement with the Krauths in person, nor do they testify to any facts showing that Mrs. Krampp signed the contract on condition that it was not to become effective until approved by her attorney, and that this fact was communicated to the Krauths or any one of them. In the circumstances the evidence is not sufficient to sustain the defense.

It follows that the compromise agreement should have been upheld and enforced.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.