*434 'OPINION of the Court, by
Judge Logan.
¿-Oit the 28th of August, 1784, Benjamin Fisher and John ^ay entered into a contract for the exchange of lands, lit which Fisher covenanted, in consideration of a certain tract of land in Virginia, containing 199 acres, to c°nvey to Kray double as much out of his Kentucky tract, as soon as the same should be secured and a patent therefor obtained ; but if through some unavoidable casualty he should be disappointed in procuring a patent, in that event He was to re-convey to Kay the Virginia tract of 199 acres. In the instrument of writing coata<umg the contract, Fisher, after the agreement as. herein mentioned, obligated himself under the penalty 0f 5oo to convey to Kav 400 acres when in his pow- .' , CF do S0‘
. , Upon this contract Kay exhibited his bill in chancery i0 compe| a conveyance of 400 acres, part of a certain ^act of 500 acres, entered in the name of Fisher in Kentucky, or for a re-conveyance of the 199 acres, or for an equitable compensation. Pending the suit Fisher departed this life, and the suit was revived against his heirs and legal representatives.
In answer to the complainant’s bill, the legal representatives of Fisher deny the right of the complainant to have his land out of any particular tract. They state w^eti t^le contract was made, their ancestor had a tight to land under two entries in Kentucky for distinct tracts, the one which has been mentioned, and another *435 ⅜ the name of William Webb, for 1400 acres, to a moiety of which their ancestor was entitled : that the said Webb would have made a conveyance to their ancestor or any one at his request, at any time When the title and boundaries should be ascertained to justify it, of which they believe the complainant was well apprised ; that their ancestor, by Andrew Gatewood his agent, has sold the said 500 acre tract, and that the complainant did not object to its sale, or pretend any claim to the same, although he was a neighbor and the brother-in-law of Gatewood, the agent.
In debt agalsfl. executor if he pleads no assets and it is found againil him, the judgment is neverthelefs againft the goods of the taftator.
In decreeing againftheir and executor, the amount fltould be directed to be made firft out of the per-fonal assets, if so much, if not the balance to be • of the as* fets descended to the heir.
Where ths? •vendor A parts with the title, whereby he is infcapable to perform, it is a fraud upon the vendee for which the ven® dor ihall an* iwer ia dama* ges for the in* creafed value of the land up to the time of making the af* fesmenu '•
They state further, that Webb has obtained a patent for the 1400 acre tract, and that they beliqye 400 acres has been laid off to, and accepted by the complainant in satisfaction of his demand, which Webb was willing to convey whenever the bond he had given their ancestor should be produced. And they state that they are willing to pay £. 66 6s. 8d. a sum they allege the complainant had offered to take for the 199 acres, about the time of the said contract, together with inlet est thereon from that time ; or that they are willing to restore the said 199 acre tract, or to convey the 400 acres, part of the 1400 acres, with warranty to restore the Virginia tract in case of eviction,
It appears from the evidence in the cause, that Fisher was entitled to a moiety of the 1400 acre claim, after deducting one third for locating, and that the complainant had agreed to take a certain part oí that tract on account of his demand against Fisher, provided he could get a good title to it, rather than go to law.
The circuit court decreed the value off 400 acres, part of the 500 acre tract, which was ascertained at the time of swearing the jury, and also interest thereon until paid, commencing from the day given for the payment of the principal; to that decree this writ of error is prosecuted, and the assignment of nine errors presented for the examination of this court. We shall proceed with them in the order in which they are presented.
1st. It is said that the complainant has not shewn a case proper for relief in chancery, his remedy, if any, being at law. The complainant’s bill goes for a specific execution of the contract, or for a re-conveyance of the land given in consideration of the Kentucky land, or for aq equitable compensation, The bill on itj face pro *436 perly gave to a court of chancery jurisdiction of the subject in demand, either in relation to the land in Ken* tacky or Virginia. But in the progress of the cause, it is shewn that the complainant was well apprised before the commencement of this suit, of the sale or the 500 acre tract, and that a recovery of any part of it was unattainable. This circufostance might have been’ material had not the complainant, independent of it, made out a proper case for relief in chancery. But having also sued for a conveyance of the 199 acres in Virginia, that properly presented a case for relief in chancery ; for there is no principle better settled, than that the oi||»gee of a bond for land may resort to a court of chancery in order to enforce a specific compliance, and in the event of the obligor’s being unable to convey, to pray them for a compensation in damages ; and the court being possessed of the whole case, it was proper that it should afford the most equitable and appropriate relief; what that should have been is a further subject of consideration.
2nd. It is assigned for error, that the proceedings and decree are against the heirs and executors jointly. This was the proper and regular manner of suing in equity : for equity delights to do entire anti complete justice, and not by halves : as first to decree against one, and then perhaps be driven to a second degree against the other ; and where both the heir and executor are brought before the court, complete justice may be done at once, by decreeing against both according to the equity of the case, and so thereby prevent a multiplicity Of suits — -See 3 P. Wil. 333, 1 Atk. 51, and the case of Strode vs. Cox decided by this court (ante 273.)
The 3d error assigned is, that the decree is against the defendants in their own individual right, when it should have been against them only to be satisfied out of the estate of their ancestor descended, and especially as to the executors. The doctrine it is true is well settled, that the heir is no further liable than to the value of the estate descended. But in order that he should be no further liable, it is necessary for him to conkss the action, and shew the certainty of assets. For if he denies assets, and it is found against him, or if he pleads other matter which implies that he has assets, the debt pf his ancestor becomes his own debt, and the plaintiff» *437 entitled to'a general judgment for the debt, damages and costs, and to sue out the like execution against him as on a judgment of his own — See Plow. 440, 2 Saund. 7, 3 Bac. Abr. 465.
In the present case the heirs have not relied on their want of assets, but on points which imply assets, and therefore they became liable in their own right to the complainants demand. But whether the decree against them is correct, without first subjecting the personal «state in the hands of the executor to the payment of the debt, is another distinct question.
The law relative to the liability of heirs and executors is different. For in debt agidost the executor, if he pleads nothing in his hands or the like, and it is found against him, there nothing shall be put in execution but ihe goods of the deceased ; and the reason is, because the debt is not the debt of the executor, but of the testator, so that he is charged in another’s rigl.it, and has the goods in another’s right. But when the heir denies assets, and it is found against him, or when he pleads ¡other matter which implies that he has assets, the debt of his ancestor becomes his own debt, on account of the assets which he is supposed to have — See Plow. 440.
From these premises the conclusion follows, that the decree as rendered against the heirs in their private right, would have been correct, if the personal estate, which is the proper fund for the payment of debts, had first been subjected to the debt. But with respect to executors who do not combine in them the character of heirs also, the decree would be erroneous.
Li this case however, the executor is one of the heirs, and being liable as such in his own right, it would be difficult to conceive why the decree in relation to him is unjust or erroneous. But as the heirs or devisees are not ail acting executors of the estate, and the personal estate being the proper fund for the payment of debts, if therefore the real property in the hands of the heirs Were taken in execution and applied in saj&iaetion of the debt, the consequence would probably be, that the heir would be pup-tó his,action against the executor in order to reimburse himself. And from the doctrine ci-Sed a court of equity in all cases delights to do complete justice, and not by halves, in entering such degree as will produce another suit, when it might be *438 avoided by decreeing in the first instance against the. personal estate as far as it extends ; and the rest to be made good by the heirs. This is the doctrine laid down in 3. P. Will. 334.
At law a creditor could at hil election sue either the heir or executor, where the heir was expressly bound. But the doctrine was and still remains otherwise in equity. And now by our statute passed in 1792, they may be sued jointly at law. At law the judgment is entered against both jointly, without distinguishing which shall he first resorted to, leaving to the officer to discharge his duty. Rut in equity the court will so mould its decree, as if possible to meet the equity of the case, and put an end to, further litigation on the subject.
It is the opinion therefore of the court, that the de-«yee is erroneous jn not having directed the debt to be made of the goods and chattels of the decedent in the hands of the executor unadministered, if so much there were ; and if not, then the balance to be made o< the estate of the heirs. On this ground the decree must be reversed. But there are other points in the cause which taay be proper to notice, and to settle between the parties.
The 4th, 5th and 6th assignments of error are in substance the same, and may be taken together. They arc-founded on the awarding a writ of inquiry and swearing a jury to ascertain the value of the land in the bond, and bill mentioned, before the court had directed by its decree what land should be valued of the several tracts mentioned. The jury were afterwards sworn “ to inquire and ascertain the value ol the 400 acres of land, described in the bond refered to in the complainant’s bill.” Although this may not have been quite regular, there is notwithstanding, and ought to be, but one inquiry with the court, did the jury ascertain the value of the proper land ? For they were sworn under the order of court, and the only question which seems, important to consider, is, whether in fact they have valued,the right land. That they valued 400 acres described in the bond is manifest irom the oath admin* istered ; and the particular tract refered to in the bond is equally certain ; for there is but one mentioned, except the 199 acres in Virginia. And whether the jury *439 valued the 400 acres on an average with the general value of the tract, or the best, or most inferior part of the 500 acres in reasonable form, cannot be made with propriety a subject of inquiry now. There seems to have been no objection to the mode in the court below. There is nothing to show this court that the criterion was improper or unjust towards the defendants below, and we cannot presume error, where it is not shewn, ⅛ a matter where from its nature it was not essential that it should be made appear in the record. It was competent for either party to have moved the court to instruct the jury upon the principie of ascertaining the value of the land in question, and if the court erred in that direction, to bring the point before this court by exceptions.
The residue of the errors assigned present these questions : Whether a part of the 500 acre tract ought to have been estimated ? how much and what should have been the measure of damages ?
The contract seems to be sufficiently explicit in relation to the specific tract of land. It was for a part of Fisher’s “ Kentucky tract.” Fisher in strictness and in truth had but one tract of land in Kentucky, from any thing appearing to the court. The very expression he adopts in reference to the land he sells, seems to have been iounded on that understanding by himself.
The tract in the name of Webb, was not Fisher’s. The expression in the bond has an evident allusion to the one m contradistinction to the other tract; and in any other view, the description would have been without any definite meaning, and rendered altogether nuga-torv.
As to the quantity to which the obligee was entitled, the obligor, alter agreeing to give double the quantity of the 199 acres, has settled the discharge of the penalty oí his bond, hy conveying 400 acres, and his heirs must abide by it. There could have been no mistake that double the quantity of 199 was not 400 •, but the difference was so inconsiderable, the parties have fixed it at 400, and the writing must be taken most strongly against the obligor, in the manner he has thus executed it. ■
\\ ith respect to the measure of damages, it is proper : 5 observe, that the ancestor of the defendants had ob *440 tained bis patent for the land he sold ; that by th& terms of the contract the complainant thereupon Lwcame-entitled to 400 acres of said land, and could have compelled a specific conveyance thereof, but. for the voluntary act of the obligor, in afterwards producing his own inability to perform, Hac; the land turned out ¡ess valuable than the 199 acres which he received for it, he might have held the benefit o! the bargain by complying with his covenant. But if it proved more valuable, be seems also to have taken the course of receiving its benefit, and thereby from its increase in value produce his own inability to perform the contract, So that lose' he would not,but gain he might.
The principle settled in the cases decided by this court between M'Connel's heirs and Dunlap’s devisees, (Hard. 41) and Patrick vs. M’Connel's heirs, (ante 47) seems to apply to this case. In those cases the vendoi having previously sold the land, was considered to have acted fraudulently, and the value of the land at the time of swearing the jury was determined to be the proper measure of damages. The case before us presents a similar case, unless there had been evidence of the complainant’s having consented to the sale ; but this nor being shewn to be the fact, the same measure of damages must therefore be applied to this case.
Decree reversed, and cause remanded with directions that a decree be there entered according to the forego* ing opinion.