## Crenshaw v. Williams.

(Decided May 20, 1921.)

### Appeal from Scott Circuit Court.

Covenants—Action on to Convey—Damages for Failure to Convey —Measure of Damages.—In a suit by the vendee against his vendor upon an executory contract to convey land, there can be no recovery for substantial damages because of the loss of vendee's bargain, where the vendor was not guilty of any active fraud or bad faith amounting to tortious conduct; but if he actively deceived the vendee, or wilfully refused to convey,

or disabled himself to convey after entering into the contract, or was otherwise guilty of such wrongful conduct, then the measure of damages would be the difference between the contract price and the reasonable market value of the land at the time the deed was agreed to be made. The case of Jenkins v. Hamilton, 153 Ky. 163, in so far as it asserts a contrary doctrine, is overruled.

FORD & FORD for appellant.

BRADLEY & BRADLEY and JAMES BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On January 19, 1920, appellee and defendant below, D. W. Williams, signed a contract agreeing to convey to the appellant and plaintiff below, J. W. Crenshaw, on March 1 thereafter, a tract of land in Scott county containing 398½ acres, the consideration being $400.00 per acre, amounting in the aggregate to $159,400.00. Ten per cent of the purchase price, or $15,940.00, was paid at the time and forty per cent of the consideration was to be paid at the date of the deed and the balance was to be divided into two equal payments, evidenced by notes of plaintiff, and payable in one and two years thereafter with interest from date and a lien upon the land. On the appointed day for the execution of the deed, or perhaps before that time, it was discovered by plaintiff that defendant could not convey a perfect title, and the executory contract for the sale of the land was not performed according to its terms. This suit was brought by plaintiff against defendant on April 22, 1920, seeking to recover damages for the failure of the latter to make the conveyance, which consisted of interest on the ten per cent payment at the time of the contract, and $310.00, alleged expenses incurred by plaintiff in surveying the land and in examining the title thereto. In the third paragraph of the petition it was alleged that the land at the time of the contract, as well as at the stipulated day for its performance, was reasonably worth on the market $179,400.00, and that plaintiff had sustained damage because of the "loss of his bargain" in the sum of $20,000.00. Besides alleging defendant's failure to convey, it is also averred in the petition (but in paragraphs other than the third) that defendant "fraudulently failed to disclose to this plaintiff at the time of the execution of said contract" his inability to convey a perfect fee simple title to the land. After-

wards an amended petition was filed setting up the defect in defendant's title, which was that the title to the land of defendant and his wife, emanated from the will of J. B. Graves, her father, and in which he devised the property involved to Mrs. Williams during her life and after her death to her children. The answer averred, *inter alia*, that plaintiff knew of the condition of the title before and at the time of the execution of the contract sued on; that Mrs. Williams was at an age where in the ordinary course of nature she would bear no more children, and that she was the mother of two children, one of whom died without descendants and that she inherited his interest and, therefore, became the owner of a one-half undivided interest in remainder to the land in question after the expiration of her life estate, and that her only other child (a daughter) had joined with herself and husband in a deed to plaintiff which he declined to accept, and that defendant had returned to plaintiff the ten per cent cash payment, made by him at the date of contract, with interest thereon and by mutual agreement of the parties the contract was rescinded. The demurrer filed to the answer was sustained, but the one filed to the petition as amended was overruled as to the first and second paragraphs, but it was sustained as to the third paragraph seeking to recover damages for the loss of plaintiff's bargain, and plaintiff declining to amend that paragraph it was dismissed, to which he excepted and prayed and has prosecuted an appeal to this court. Plaintiff dismissed his action seeking a recovery of the interest on the ten per cent cash payment (since it had been paid) and the court gave judgment in his favor for a part of the other damages claimed. Defendant has not appealed therefrom, nor has he appealed, or moved for a cross appeal from the judgment of the court sustaining a demurrer to his answer, and none of the questions involved therein are before us.

It will thus be seen that the sole question for determination is, whether plaintiff may recover substantial damages under the facts presented for what is known in the law as "the loss of his bargain," *i. e.*, the excess market value of the land above what he agreed to pay for it. If this question had been submitted to us without investigation we should have unhesitatingly said that plaintiff was entitled to recover such damages; but our investigation has shown that the courts generally,

including this one, deny such recovery in the sale of real estate where the vendor acts in *good faith*, and is guilty of no *positive* or *active* fraud in the transaction.

Approaching the question in somewhat reverse order, and addressing ourselves for the moment to what we term an exactly analogous question, it may be confidently stated that this court, from its beginning, has uniformly held that the measure of damages upon a breach of warranty of title contained in a deed is the value of the land at the time of the conveyance, if the entire title failed, or the proportionate part of that value which the acreage of the land lost on account of the breach, bore to the entire acreage of the tract, and other items of expense resulting proximately from the breach; and that in the absence of some showing to the contrary, the value of the land entering into the measure of the damages in such cases was the consideration paid, or agreed to be paid. In no case has this court permitted the recovery in such cases of any increase in the market value of the land above that which was agreed to be and was actually paid. New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183 (and cases therein referred to); Helton v. Asher, 135 Ky. 751; Sullivan v. Hill, 33 Ky. L. R. 962, and Robertson v. Lemon, 2 Bush 301. If no other value may be taken into consideration in estimating the damages to the covenantee in a suit by him upon the breach of warranty *actually* made, than that agreed upon by the parties as a consideration for the conveyance of the land, it is difficult to perceive the reason for the application of a different rule where the obligation sued on, instead of being an executed warranty, is only an agreement *to* execute one. It is the absence of any semblance of logical distinction between the two cases that influenced the English courts in an early day, and the courts of most of the states of the Union, including this one, to adopt the rule first above stated, i. e., denying substantial damages because of increased market value of the land in a suit for the breach of a contract to convey it where the vendee was guiltless of active fraud and acted in good faith. The earliest English case coming under our observation, so holding, is Flureau v. Thornhill, 2 W. Bl. 1078. That case has since been followed by those of Pounsett v. Fuller, 17 C. B. 660; Walker v. Moore, 10 Barn. & C. 416; Sikes v. Wild, 1 Best & S. 587; same case, 4 Best & S. 421; Bain v. Fothergill, L. R. 6 Exch.

59.; same case, L. R. 7 H. L. 158; Engell v. Fitch, L. R. 4 Q. B. 659, 10 B. & S. 738, and Jones v. Gardner, 1 Ch. 191, 71 L. J. Ch. 93, 86 L. T. Rep. N. S. 74. In support of the above rule and for a list of cases, both English and American, supporting it we refer to the note to case of Beck v. Statts, 16 L. R. A. (N. S.) on page 771; 39 Cyc., pages 2105-2111, inclusive, and 27 R. C. L. 633-634. In the last work cited, in stating the general rule, the text says: "A distinction is usually made as regards the general damages recoverable between cases where the vendor acts in good faith in entering into the contract and cases where good faith is wanting. In the former case it is held that the measure of damages is the amount of the purchase money paid with interest, thereby denying to the purchaser any recovery for the loss of his bargain. This is the rule laid down in the early English case of Flureau v. Thornhill (2 W. Black 1078), decided in 1775 and subsequently followed in that country, and has been adopted in most jurisdictions in this country, and in Canada." See also note to the case of Ontario Asphalt Block Co. v. Montreuil, Ann. Cas. 1917B, 852 on page 860. The above authorities, in addition to containing references to cases from the courts of various states of the Union, England and Canada, also show that some of the states have adopted the rule by statute.

Coming now to the opinions in our court the first case directly in point seems to be that of Allen v. Anderson, 2 Bibb 415, which was a suit on a contract similar in all respects to the one now under consideration. After referring to the case of Cox's Heirs v. Strode, same report, page 276, which was a suit for breach of warranty of title, and in which it was first held that the value as fixed by the consideration agreed to be paid should measure the criterion of damages, the opinion says: "On a covenant to convey where the vendor is without fraud incapable of making a title, the rule should be the same. In either case, the real damage the party has sustained is the purchase money, with interest from the time it was paid. In reason there exists no distinction between the two cases; a purchaser before the seller completes his engagement, is not entitled to compensation for the fancied goodness of his bargain, which he may suppose he has lost, more than he is after it is completed. As to the damages that ought to be recovered on

a covenant to convey, see the case of Flureau v. Thorn-hill, 2 Black, Rep. 1078.''

The next case directly in point is that of Rutledge v. Lawrence, 1 A. K. M. 396, which was also a suit exactly similar to the one here and we insert this excerpt from the opinion: ''It has been settled by a current of decisions in this court that where one contracts to convey land, and is without fraud, unable to make a title, the measure of damages, to which the vendee is entitled, is the value of the land at the time of the sale, to be ascertained by the consideration fixed, or other evidence. Where the inability of the vendor has been produced by fraud on his part, a different rule has prevailed; but a failure to convey has never been adjudged to be evidence of a fraudulent inability, and we think ought not to be so adjudged. For an inability to convey may, and frequently does, happen without fraud, and fraud is odious in law, and ought never to be presumed.'' Other cases in point are: Kelly v. Bradford, 3 Bibb 317; Goff v. Hawks, 5 J. J. M. 341; Combs v. Tarlton, 2 Dana 464; Herndon v. Venable, 7 Dana 371; Triplett v. Gill, 7 J. J. M. 438, 12 Am. Dec. 431; Booker v. Bell, 3 Bibb 173, and Grundy v. Edwards, 7 J. J. Mar. 368. In the Goff case, *supra,* which was also one on all fours with this one, the opinion says: ''Since the decision in the case of Cox's Heirs v. Strode, 2 Bibb 276, the criterion of damages upon a covenant to convey the land, which has been violated, but without fraud on the part of the covenantor, is the purchase money and interest thereon, or in the language of the case of Rutledge v. Lawrence, 1 Marshall 397, it is, the 'value of the land at the time of the sale, to be ascertained by the consideration fixed or other evidence.' If, however, the covenantor has been guilty of fraud, a different rule may govern the case. Then he would be responsible for the increased value of the land, at the time his covenant should have been performed.'' We deem it unnecessary to fortify this thoroughly established rule by reference to other authorities or cases, except to say that in the case of Freeman v. Falconer, 201 Fed. Rep. 785, 120 C. C. A. 32, the Federal Circuit Court of Appeals for the sixth circuit had before it for determination the exact question here presented, and which arose out of an agreement to sell land situated in Kentucky. The court applied the above rule (usually denominated the ''good faith rule'') and in doing so

said: "We understand the rule in Kentucky to be that in contracts for the sale of land situated in that state, and in cases not involving his fraud or bad faith, the vendor, in the event of his failure to convey, is liable to the vendee on the basis of the value of the land at the date of making the contract, rather than such value at some later date contemplated for conveyance, and is liable, also, for such expense as the vendee may reasonably and properly incur under the contract." At the time that opinion was rendered this court had apparently held to the contrary in the case of Whitworth v. Pool, 29 Ky. L. R. 1104, 96 S. W. R. 880 (a case relied on by appellant), but in rejecting the opinion in that case as an authority against the well settled rule in this Commonwealth and distinguishing it, that court said: "But the case of Whitworth v. Pool, is, we think, clearly distinguishable from the instant case. There the land in question was owned by R. J. Whitworth and his wife, Mary Whitworth, each owning an undivided one-half interest, and they arbitrarily (and so, necessarily, in bad faith) refused to convey it." Necessarily an arbitrary refusal to convey, or putting it out of the power of the covenantor to convey, between the date of the contract and the time for conveyance, are each acts of *bad faith* and in and of themselves remove the case from the application of the rule under consideration, and the Federal Circuit Court of Appeals in the case referred to correctly held that the Whitworth case was not an authority in conflict with prior Kentucky decisions.

Fortifying the reason for the rule, and as illustrating the views of this court upon the question involved, we refer to the unbroken line of cases decided by this court holding that in a suit for a deficit in the quantity of land agreed to be conveyed the plaintiff, where he is allowed to recover it all must do so on the basis of the value of the shortage *as of the date of the conveyance,* which is that fixed by the parties as a consideration therefor. There has been no departure from that rule in those cases, some of the later ones of which are: Moreland v. Henry, 156 Ky. 712; Hunter v. Keightley, 184 Ky. 835, and Hartsfield v. Wray, 181 Ky. 836. So that, we not only find that this court has heretofore held (with one exception hereafter to be noticed) that on the precise facts we have here (conceding there was no fraud, this question hereafter

to be noticed) substantial damages for the loss of the bargain are not recoverable, a doctrine also followed by the great majority of foreign courts, but the same rule is also applied in the two analogous cases referred to, viz.: in actions for a breach of warranty contained in a deed, and in cases to recover damages for a deficit in the amount of land conveyed.

The exception referred to and relied on by counsel for appellant is the case of Jenkins v. Hamilton, 153 Ky. 163; and it must be conceded that the opinion in that case, although the facts are somewhat different from those here involved, constitutes a departure from the long line of cases preceding it. It may be that in that case the court concluded that defendant was guilty of *bad faith* disentitling him to the benefits of the "good faith rule," above discussed, since he did not pretend to have *any* title at all, or any interest whatever in the premises which he contracted to convey; but whether so or not, it does appear that the question hereinbefore dealt with was not referred to or discussed in the opinion, nor was there any reference made to any of the numerous cases from this court, or elsewhere, applying the above rule. The foreign cases discussed in that opinion bear only upon the question as to whether the knowledge of the plaintiff concerning the condition of the title, and the defendant's inability to convey, are sufficient to constitute a defense to the suit. None of them referred to the measurement of damages, but only to the question as to whether the suit was maintainable. It may be, so far as we are capable of judging from the opinion, that the question was not made or argued in that case; but, be that as it may, we are convinced that the brief statement contained in it, announcing a different rule for the measurement of damages in cases like this, is so much out of harmony with the great preponderance of the law, as we have herein shown, that the abstract announcement therein made should no longer be followed, and that it is our duty to return to the plainly marked and well beaten path theretofore travelled by us.

It has been wisely said, in substance, that it is not so material as to what the law is as that it be certain. It is, of course, the intent of the law, and the desire of the courts, that abstract justice should prevail in every case, and that judicial declarations should harmonize

with logic and reason as inspirations for them; but in the multiplicity of complicated facts found in almost every case, which control its final destiny, such a coveted result can not always be obtained by fallible humanity. There can be, however, in the same jurisdiction approximate certainty as to the law applicable to the same state of facts, and courts of last resort should strive for the consummation of that end. Thus guided, and remembering the *stare decisis* doctrine, we are constrained to hold that the doctrine of the cases hereinbefore referred to (except the Jenkins case) is the one which we should adopt in this case.

If it should be asked why there should be a different rule, governing the measurement of damages for failure to comply with a contract relating to real estate, than the one applying to a contract for the sale of personalty, we might find it difficult to give a satisfactory answer. The English courts put the distinction upon the ground of the intricate involvement of titles to real estate growing out of the variously worded deeds, wills, and other muniments of title, so that a vendor might innocently believe that he could convey a good title when a learned attorney or a court might determine otherwise. Another reason suggesting itself to us is that real property is the only character of property absolutely essential to human existence, and that it is the policy of the law for it to remain in the hands of home builders and home maintainers, and not to encourage speculative or chance bargaining in it, but to adjust the rights of the parties concerning its transfer, in the absence of fraud or bad faith, by placing them *in statu quo,* which in the absence of a contrary showing will be presumed to have been in their contemplation. Furthermore, land values oscillate, because of rapidly occurring events which the parties at the time of making the contract could not possibly contemplate; illustrations of which are, the discovery of minerals in the land or in the neighborhood of it, the existence of which were wholly unknown at the time of the contract, and perhaps other equally unanticipated developments. But, whatever the reason may be, it is our duty to administer the law as it is and not as we might have written it at the beginning.

But, it is insisted that plaintiff's pleading brings this case within the exception to the rule discussed, and shows that defendant was guilty of fraud, such as to de-

prive him of the benefit of the rule, and to permit plaintiff to recover damages for the loss of his bargain. We do not so construe the language of the petition. It nowhere charges any active fraudulent act on the part of defendant. The only fact which plaintiff alleged as constituting the fraud upon which he relies, is that defendant did not disclose to him the condition of the title, i. e., did not refer him to the will of J. B. Graves (which was of record) and did not inform him that this court had held that there was yet a possibility of Mrs. Williams bearing children. We do not think that such silence on the part of defendant constituted that character of fraud referred to in the authorities, *supra,* as being sufficient to change the rule.

Of course, each case must be governed by its own peculiar facts, and looking to them as they appear in this case we have concluded that the court properly determined the case and its judgment is affirmed.