### Miles et al. v. Ashby.

Oct. 19, 1943.

Claude E. Smith for appellants.

Morton Holbrook and E. B. Anderson for appellee.

Opinion of the Court by Judge Rees—Affirming.

On July 14, 1936, A. T. Miles and S. D. Miles, owners of a 177-acre farm in Ohio county, executed and delivered to F. M. Ashby a deed conveying to him a one-half interest in the oil and gas underlying their land. On December 31, 1940, they brought this action against Ashby seeking a cancellation of the deed. As grounds for cancellation they alleged lack of consideration, mistake on part of plaintiffs in executing it, and fraud, misrepresentation and duress practiced on the plaintiffs by the defendant in its obtention. After the issues were completed a large amount of proof was taken, and a judgment was rendered dismissing the petition as amended.

The pertinent facts are these: Appellants executed an oil and gas lease on their farm to the Kentucky Natural Gas Corporation on July 27, 1934. The lease provided that the lessee should commence a well on the land within one year or the lease should terminate as to both parties unless the lessee on or before that date should pay or tender the lessors or to the lessors' credit in the Fordsville Bank at Fordsville, Kentucky, which should continue as the depository regardless of the change in the ownership of the land, the sum of $1 per acre per year, payable semi-annually, which should operate as a rental and cover the privilege of deferring the commencement of a well. The lease contained this provision: "Should the first well drilled on above described land be a dry hole, then in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said

twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinafter provided.'' It then provided that upon the resumption of payment of rentals the lease should continue in force just as though there had been no interruption in the rental payments.

The Kentucky Natural Gas Corporation drilled a dry hole on the land in December, 1934. On May 22, 1936, appellants executed to appellee, F. M. Ashby, an oil and gas lease on the 177-acre farm and in June, 1936, he moved a drilling rig on the land. On July 11, 1936, a commercially producing oil well was completed. A day or two later he received a letter from a firm of attorneys representing the Kentucky Natural Gas Corporation notifying him that their client had an oil and gas lease on the land superior to the lease executed to him by the appellants on May 22, 1936. Appellee, accompanied by his attorney, went to Hartford, the county seat of Ohio county, and examined the lease of June 27, 1934, to the Kentucky Natural Gas Corporation, which was recorded in the clerk's office. He then went to Fordsville and found that the Kentucky Natural Gas Corporation had deposited $88.50 in the Bank of Fordsville on June 16, 1936, to the credit of appellants for six months' rental under its lease. He informed appellants at once of the results of his investigation, and advised them that they were liable to him on the warranty contained in their lease. After some discussion they agreed to convey him one-half of the oil and gas underlying the land in settlement of any claim he might have against them on account of the breach of warranty. On July 14, 1936, they did execute to him a deed for one-half of the oil and gas under their farm, and it is this deed they now seek to have canceled. Soon after this transaction the Kentucky Natural Gas Corporation moved drilling rigs on the land and began drilling. When this suit was instituted on December 31, 1940, seventeen producing wells had been completed and $8,776.56 in royalties had been paid, of which appellee had received one-half, or $4,388.28. When appellants executed and delivered to appellee the mineral deed conveying to him one-half of the royalty interest in the oil on their 177-acre farm, appellants were conducting a restaurant on the corner of Main and Triplett streets in Owensboro, Kentucky, in a building owned by a brother of appellee. It appears that appellee furnished the capital, appellants managed the business, and

the profits were divided one-half to appellee and one-half to appellants. This arrangement continued until sometime late in the year 1936, when the restaurant was closed because the venture became unprofitable. The relations between appellants and appellee remained friendly, and after appellants' return to their farm they borrowed small sums of money from him. On two occasions they signed division orders agreeing that appellee was entitled to 1/16 of the oil produced as his part of the royalty and that each of them owned a 1/32 interest.

Appellants argue that by reason of the confidential relations existing between appellants and appellee at the time the mineral deed was executed, the burden of showing its fairness rests upon appellee. The rule invoked applies as between partners only when the transaction is connected with the partnership business. Since each partner is the confidential agent of the other, each is entitled to a full disclosure of all material facts within the knowledge of the others relating to the partnership affairs. Axton v. Kentucky Bottlers Supply Company, 159 Ky. 51, 166 S. W. 776, Ann. Cas. 1915D, 74; Hollowell v. Satterfield, 185 Ky. 397, 215 S. W. 63. Where the transaction is wholly distinct from the partnership business, as in the present case, the rule has no application since the reason for the rule is absent. None of the parties was the confidential agent of the other in the transaction resulting in the execution of the mineral deed.

Appellants testified that appellee came to their restaurant on the day the deed was executed and stated that they had leased him something they didn't own, and asked them what they were going to do about it. He also stated he would send them to the penitentiary if they didn't do something. Appellee denied making any threats and testified that his conversation with appellants was friendly and, after a full discussion of the matter, they agreed to convey to him a half interest in the oil and gas. His version of the transaction is sustained by the conduct of the parties on that day and during the more than four years that followed before the institution of this suit.

It is claimed that appellants executed the mineral deed to appellee under mistake in that they were led to believe the Kentucky Natural Gas Corporation lease was in force when, as a matter of fact, it was void. The Kentucky Natural Gas Corporation's lease had not expired.

On the day the lease was executed the lessee paid to the lessors $177. They claim now that this was a bonus and not rental, and that no rental was paid until $88.50 was deposited in the Bank of Fordsville on June 16, 1936. The testimony and the circumstances clearly show, however, that the $177 paid on June 27, 1934, was for rental on 177 acres at $1 an acre per year. When the dry hole was drilled in December, 1934, the payment of rentals was excused by the terms of the lease for a period of one year. The lease provided that "if a second well is not commenced on said land within twelve months from the expiration of the last rental period which rental has been paid," the lease should terminate unless the lessee should resume the payment of rentals. When the Kentucky Natural Gas Corporation paid appellants $177 it paid the rentals until June 27, 1935. After the dry hole was completed further rentals were not due until June 27, 1936, and the lessee paid the rentals six months in advance on June 16, 1936, before the lease expired.

It is finally argued that appellants executed the mineral deed without consideration since the measure of appellee's recovery for the breach of warranty of title if he had elected to sue for the breach would have been $1, the consideration he paid for the lease. Appellants cite Potts v. Moran's Ex'rs, 236 Ky. 28, 32 S. W. (2d) 534; Crenshaw v. Williams, 191 Ky. 559, 231 S. W. 45, 48 A. L. R. 5; New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183, 221 S. W. 245, and other similar cases, which announce the rule that where a vendor acts in good faith in conveying land and is guilty of no positive or actual fraud in the transaction but is unable to convey a good title to the land, the purchaser cannot recover damages for the loss of his bargain but can recover only the purchase money paid with interest. Here, the lease recited a cash consideration of $1. That was not the only consideration. The lessee agreed to develop the land for oil and gas and spent a large sum of money in drilling one well. There not only was ample consideration for the lease contract, but also for the mineral deed executed in settlement of appellee's claim.

When a vendee has suffered damages by reason of a breach of warranty, he may recover, in an action against the vendor, his recovery to be measured in accordance with the rule cited by appellants or the claim may be settled by the parties. The settlement may provide for payment of the claim in cash or in some other manner. Here,

the appellee in settlement of his claim, which was substantial, accepted one-half of appellants' royalty interest. The value of that interest was problematical. One dry hole had been drilled on the land one producing well had been completed. The producing well was from a shallow sand, and its life and production as well as the life, extent, and production of the oil field were uncertain. The evidence is insufficient to warrant the conclusion that the settlement was not made honestly and fairly, and the chancellor properly refused to cancel the deed.

The judgment is affirmed.