## Gober v. Leslie.

May 18, 1948.

W. A. Armstrong, Armstrong & Armstrong and W. J. Goodwin for appellant.

Lawrence S. Grauman for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

Rowland Leslie, the appellee, recovered judgment against H. C. Gober, the appellant, for $5,000 in damages for breach of a written contract for sale of real estate plus a $1,000 deposit made with Gober's agent to bind the deal. Gober appeals.

As his ground for reversal of the judgment, which was rendered in chancery, Gober now contends that all the evidence in this case tended to prove that the contract was invalid for these principal reasons, viz., because (a) Gober did not know he was signing this contract as such and because (b) he had verbally forbidden any sale to Leslie under the contract and because (c) he had no authority to bind his wife, who owned a half interest in the property of the contract.

The pertinent parts of this disputed document, forming the basis of this suit, are as follows:

"Louisville, Ky. Dec. 26, 1945.

"Hugh L. Barnes Co.

"Thru you as agent, I will take for the following described property in Buechel, Kentucky, 246 x 250 feet, located on the corner of Bardstown Rd. and Buechel Bank Rd, containing 1.43 acres, with all improvements thereon and known as corner of Gober Farm, the sum of ($7500.00) Seventy Five Hundred Dollars, payable as follows:

"All cash on delivery of deed. The above lot is to front 246 ft on Bardstown Rd and 250 ft on Buechel Bank Rd. This proposition is entirely contingent on this lot being rezoned for light commercial purposes on or before 90 days from date. Otherwise becomes null and void.

\* \* \* \* \* \*

"As evidence of good faith binding this contract, a deposit of $1,000.00 is to be applied on purchase price upon delivery of deed or refunded should title prove uninsurable or if this offer is not accepted.

\* \* \* \* \* \*

"This proposition is good until 6 PM on the 30 day of December 1945.

"H. C. Gober

"The above proposition is accepted—day of 30 Dec. 1945.

"Rowland Leslie."

As the foregoing writing indicates with reasonable clarity, Gober had in his possession and evident control a farm near Louisville which included the corner lot in

controversy. The property was zoned for residential use. He wanted the zoning changed to permit commercial use and was willing to deliver title to the corner lot containing 1.43 acres for $7,500, which was doubtless a very reasonable price, through a sale by his specified agent, Hugh L. Barnes Company, conditioned upon the unspecified buyer accomplishing a zoning change within 90 days and also conditioned upon such buyer accepting the proposition within 4 days and depositing $1,000 as a binder on the transaction.

Leslie and his witnesses proved that Gober read this document before signing it; that Leslie himself thereafter signed it and deposited $1,000 with the agent, all within the 4 day period specified in the document; that the zoning was, at an official hearing attended by both Gober and Leslie in common purpose, changed so as to permit commercial use of the property; that Gober, although originally expressing some qualified objection to a sale of this lot to Leslie, had later, on the very date of the document itself, agreed that the property could be sold to Leslie because he had all the required cash for the deal; that Leslie, after accomplishment of the zoning change, had the lot's title examined and its boundaries surveyed and thereupon notified Gober of his readiness to close the deal; that Gober failed to close the deal but instead, along with his wife, closed another deal for a sale of approximately two-thirds of the very same lot to another buyer for $10,000.

Gober and his witnesses stoutly refuted some parts of Leslie's evidence as summarized above. However, they did not refute the actual signing by Gober of this document nor his desire for the zoning change nor the accomplishment of that change nor Leslie's deposit of $1,000 nor Leslie's willingness to close the deal nor Gober's final sale of two-thirds of this lot to another buyer at $10,000.

Although Gober contended that this contract was invalid because he did not know he was executing it as such and because he had particularly forbidden any sale to Leslie under it, yet the evidence was, as we have indicated above, conflicting on these two propositions. Therefore, under our well known rule of following the chancellor's findings in the face of conflicting evidence

on doubtful questions presented, we feel that we must now follow such findings in the instant case. There was, as we firmly believe, an abundance of probative evidence, as shown by this record, to support the chancellor's findings on these disputed questions. And so, we follow the chancellor in accordance with our fixed rule. See 2 Kentucky Digest, Appeal and Error, Key 1009, for citations of many authorities promulgating this rule.

Still further, Gober says that all the evidence in this case tended to show that his wife did not authorize this contract for a sale of their jointly owned lot and that therefore the contract was invalid and the judgment on it was reversibly erroneous. Gober's premise is absolutely right but his conclusion is absolutely wrong. The evidence on this question of authorization completely sustained Gober. However, we observe that this suit was, as it finally evolved, not one for specific performance of the contract but was rather one for damage for breach of the contract. Accordingly, the question for determination in this case was not whether Gober was properly authorized but whether he failed in his guaranteed mission of delivering title, including any necessary persuasion of his wife to join him in this sale of their common property. Any man experienced in everyday relations with "the woman whom thou gavest to be with me," as Adam referred to the wife, surely knows that embarkation on such a mission must be at his peril and at the risk of total failure with resulting damage to his obligee in a contract of this kind. The little wife often has a big will. Therefore, the pants' wearer must keep this in mind when he contracts to sell the family heath. A writer once put it this way:

"Where is the man who has the power and skill
To stem the torrent of a woman's will?
For if she will, she will, you may depend on't;
And if she won't she won't; so there's an end on't."

We have held that it is not essential to the validity of a contract that the vendor have good title at the time he enters into the contract, since it is competent for him to acquire the title afterwards and render himself able to convey a perfect title at the time he is called upon by his contract or by the law to do so. See Schmidt

v. Martin, 199 Ky. 782, 785, 251 S. W. 999. And so, we must now hold that his lack of full title to this lot did not relieve Gober from his responsibility under this solemn obligation of signed and written agreement. Although the war contractors in this country did not have the products of their contracts when they executed them in recent years, yet they bound themselves to deliver those products and all such contracts were perfectly valid as sacred obligations.

Wherefore, having carefully considered all the arguments advanced by Gober as proper reasons for reversal of the judgment against him, we must now say that we disagree with him regarding the reversibility of such judgment on any sound legal basis. Accordingly, the judgment is hereby affirmed.