# Raisor v. Jackson.

November 4, 1949.

As modified on denial of rehearing January 31, 1950.

Funk, Chancellor and Darnell for appellant.

Ardery and Hobson for appellee.

CLAY, COMMISSIONER—Reversing.

This suit was brought by appellant, the buyer, to recover damages for the seller's breach of a contract to convey real estate. Following the trial Court's instructions, a verdict was returned in appellant's favor

for nominal damages of $1. These instructions authorized the jury to award substantial damages (the difference between the contract price and the reasonable market value of the property) only in the event it found appellee acted in bad faith and was guilty of positive or actual fraud. The question before us is whether or not these instructions correctly submitted the applicable law governing the rights of the parties.

On February 14, 1947, the property was sold to appellant at a public auction for $22,252. He complied with the terms of sale by making a down payment of $4,500. A few days later when appellant called on appellee to convey the property, the latter advised he could not do so because his wife, who owned an undivided one-half interest therein, refused to join in the deed. The down payment was returned to appellant, and shortly thereafter appellee and his wife sold the property to another party. On the trial there was evidence the land had a reasonable market value in excess of the sale price.

Appellee clearly breached his contract. He contends, and his contention was upheld by the trial Court in giving the instructions, that if he was acting in good faith and was guilty of no positive or actual fraud, appellant was only entitled to nominal damages. Appellant insists the breach of contract entitled him to recover for the loss of his bargain.

While the question presented is not novel, it is one of broad significance. Research indicates that numberless courts for many years have wrestled with the problem and have reached differing results. In our own jurisdiction we find conflicting decisions. The differences of view are manifest in two cases squarely in point and inconsistent in conclusion. They are: Potts v. Moran's Executors, 236 Ky. 28, 32 S. W. 2d 534, and Gober v. Leslie, 307 Ky. 477, 211 S. W. 2d 658. The correct decision in this case makes necessary a re-appraisal of the governing principles.

The doctrine that a purchaser of land from a seller unable to make title should only be permitted to recover nominal damages, and not substantial damages for the loss of his bargain, originated in the old English case of Flureau v. Thornhill, (1776), 2 W. Bl. 1078, 96

Eng. Rep. 635. In that case plaintiff purchased a lease-hold. When the title was examined, the seller "could not make it out." The buyer sued for damages based on his loss of profit in certain stocks which he had sold to raise the purchase money. In denying the purchaser substantial damages, the Court laid down the rule that "if the title proves bad, and the vendor is (without fraud) incapable of making a good one," the purchaser is not entitled to damages for the "fancied goodness of the bargain." It is difficult to understand how that case, *which simply involved highly speculative damages,* could have been accorded the authoritative position it has enjoyed for the past 173 years.

Subsequent to the Flureau case, the English courts, over a span of almost 100 years, threatened to distinguish it out of existence. See Pounsett v. Fuller, 17 Com. B. 660; Robinson v. Harman, 1 Excheq. 849; Engel v. Fitch, L. R. 3 Q. B. 315; and Hopkins v. Grazebrook, 6 Barn & Cress. 31. In 1874, in Bain v. Fothergill, L. R. 7 H. L. 168, the House of Lords revived it. In that case the defendants agreed to assign plaintiffs a lease. The former were not able to make a good assignment because of their inability to obtain the consent of the landlord, required by the lease. Suit was brought to recover damages for the loss of the buyer's bargain. Drawing heavily on the Flureau case, and disapproving of later cases which had limited the scope of the supposed rule there announced, the majority denied the full relief sought by the plaintiffs. The basis of the decision was that a contract to convey land carries no warranty that the vendor has power to convey, but involves the implied condition, which the buyer is charged with accepting, that the vendor has good title. This is a rather astounding theory which seems contrary to the most fundamental principles of contract law.

Mr. Justice Denman, in a vigorous dissent, accepted the authority of the Flureau case insofar as it related *to an unknown defect in title* but carefully pointed out that the application of the principle was dependent on the *reason for the seller's inability to convey.* His theory was that a vendor who undertakes to make good title, knowing that he has no title (or knowing that the consent of a third party is necessary), is just as responsible for his failure to perform as anyone else breaking

his contract. He quoted from an earlier decision wherein the Court held the original doctrine of the Flureau case should not be extended to those persons who, with knowledge of their present inability, *"take upon themselves to sell in the speculative belief that they will be able to procure an interest and title before they are called upon to execute the conveyance."* In effect this view is that a seller, having positive knowledge he is unable to convey individually, assumes the risk that he will be able to procure the necessary acts of third parties.

Let us now examine the case of Crenshaw v. Williams, 191 Ky. 559, 231 S. W. 45, 48 A. L. R. 5, decided by this Court in 1921. In that case the defendant had agreed to convey a tract of real estate to the plaintiff. Examination of the title indicated the defendant's wife was devised a life estate in the property with remainder to her children. She had two children, one of whom had died and whose interest she had inherited. The other child, with her, joined in the deed plaintiff refused to accept. The wife was of such an age that in the ordinary course of nature she would bear no more children. The imperfection in the title was the possibility that unanticipated, unborn children might have a remainder interest in the property. Under these circumstances it was held that if the vendor acted in good faith and was guilty of no positive or active fraud, the buyer could not recover the difference between the reasonable market value of the land and the price he had agreed to pay for it.

We still think that decision was and is sound. The rule there announced was justified on the ground that the intricate involvement of titles to real estate may often lead the apparent owner into the innocent mistaken belief that his title is good, whereas minute examination by title specialists may disclose some fine but formidable flaw. Under those circumstances the good faith of the seller is a proper factor to consider in balancing the rights of the parties. A recent case involving unusual features which justified the application of the good faith doctrine is Kramer v. Mobley, 309 Ky. 143, 216 S. W. 2d 930.

We now come to the case of Potts v. Moran's Exe-

cutors, 236 Ky. 28, 32 S. W. 2d 534. In that case the seller was unable to convey to the buyer because his wife, who had a dower interest in the property, refused to sign the deed. It was there decided that in the absence of a showing of bad faith on the part of the seller, the buyer was only entitled to recover nominal damages. The opinion cites with approval the Crenshaw case (191 Ky. 559, 231 S. W. 45, 48 A. L. R. 5) above discussed, but careful examination will demonstrate that the two cases involve quite different circumstances. The opinion goes further, however, and resorts to the reasoning followed in the original English authorities. It is fair to say the decision dropped its anchor squarely on the case of Bain v. Fothergill, L. R. 7 H. L. 158, heretofore considered. Yet it was acknowledged that the rule adopted was in conflict with decisions from the jurisdictions of Alabama, Ohio, Florida, Indiana, Kansas, West Virginia, Virginia and New York.

We are now of the opinion that the Potts case extended the good faith doctrine to a set of circumstances wherein its application has no sound justification. The reasoning in the case is based on a *latent defect* in title, but the rule is applied to a situation involving a *known lack of title*. In the former case there may well be an honest mistake; in the latter such is impossible. It is true a seller may be mistaken concerning his ability to obtain the necessary conveyance from a third party, *but he cannot be mistaken concerning the state of his ownership at the time he executes the contract.* In one case there is a negative failure of title; in the other there is a positive failure of the seller to perform what he has undertaken.

The two types of cases fall within the accepted principles of contract law relating to impossibility of performance. As set forth in Restatement, Contracts, Section 455, impossibilities arising from the inability of the promisor to perform an act do not discharge the duty created by the contract. In the comment to this section, the vital distinction is noted between "the thing cannot be done" and "I cannot do it." It is said in 12 Am. Jur., Contracts, Section 370: "If a promise is conditioned upon the act or consent of a third person, the condition must be performed. But the inability to

control the actions of a third person, whose co-operation is needed for the performance of an undertaking, is ordinarily not to be regarded as an impossibility avoiding the obligation. One who engages for the act of a stranger must procure the act to be done, and the refusal of the stranger without the interference of the other party to the contract is no excuse. The performance of an absolute promise is not excused by the fact that a third person refuses or fails to take action essential to performance."

From what has been said above, it is obvious that the matter of good faith is not material in the type of case we are considering. The seller has simply undertaken to do something which he finds he cannot do. His intentions or motives are without significance. As stated in the case of Doherty v. Dolan, 65 Me. 87, 91, 20 Am. Rep. 677: "The pecuniary damages are the same to the vendee, whether the motive of the vendor in refusing to convey is good or bad. It is a difficult thing to ascertain whether or not a vendor is actuated by good faith in his refusal to convey. There can easily be frauds and deceits about it. The vendor is strongly tempted to avoid his agreement, where there has been a rise in the value of the property. The vendee, by making this contract, may lose other opportunities of making profitable investments. The vendor knows, when he contracts, his ability to convey a title, and the vendee ordinarily does not. The vendor can provide in his contract against such a contingency as an unexpected inability to convey."

In some jurisdictions it has been held that bad faith is *imputable* to the vendor who, knowing his present inability to comply with the contract, undertakes to convey land. See Stone v. Kaufman, 88 W. Va. 588, 107 S. E. 295; Key v. Alexander, 91 Fla. 975, 108 So. 883. Whether we adopt the view that good faith is no defense, or the view that the vendor is ipso facto guilty of bad faith in contracting to do what he knows he is unable to do, the same result follows, i. e., the vendor's inability to convey is no legal excuse for the failure to perform and does not entitle him to special equitable consideration. For additional cases in support of this conclusion see 48 A. L. R. 12, 42, 45, and 68 A. L. R. 137, 147.

The case of Gober v. Leslie, 307 Ky. 477, 211 S. W. 2d 658, decided by this Court in 1948, involves facts almost identical with those on this appeal. The opinion does not discuss the authorities herein referred to, but we reached the same conclusion we now consider inescapable: the buyer may recover substantial damages, if he can prove them, without regard to the seller's good faith, if the breach of contract is occasioned by the failure of the seller to obtain a conveyance of his wife's interest in the property.

This is simply a recognition of the principle that where a seller unconditionally agrees to convey real property, knowing he has no title or with knowledge of an outstanding interest therein owned by a third party, he is bound by his undertaking to deliver a good deed to the purchaser; the question of good faith is immaterial if he breaches his agreement; and if the buyer is so damaged, he may recover the difference between the contract price and the reasonable market value of the property at the time the contract was executed. This decision does not impair the rule relating to latent defects in title, applied in the Crenshaw case (Crenshaw v. Williams, 191 Ky. 559, 231 S. W. 45, 48 A. L. R. 5), but it does overrule, to the extent of any conflict, the holding in the Potts case (Potts v. Moran's Executors, 236 Ky. 28, 32 S. W. 2d 534). This determination requires a reversal of the judgment before us.

Assuming the evidence of the contract and its breach to be the same on a new trial, the instructions should authorize an award of substantial damages, if they are proven, without presenting the issue of appellee's good faith. We do not undertake to pass upon the issue of fraud or collusion on the part of appellant which was raised at the former trial.

For the reasons stated, the judgment is reversed, with directions to grant appellant a new trial and for proceedings consistent herewith.

Cammack, J., not sitting.