## SULLIVAN v. ESTERLE.

Court of Appeals of Kentucky.

May 28, 1954.

James P. Miller and Niles & Will, Louisville, for appellant.

Johnson & Marshall, Louisville, for appellee.

STANLEY, Commissioner.

The appellee, Louis D. Esterle, recovered judgment for $3,100 damages for loss of bargain under a contract to sell him a house and lot on 19th Street in Louisville, which contract was not consummated by the other party, the appellant, George S. Sullivan. Sullivan did not make or even offer to make the conveyance. The judgment was rendered as an alternative for one for specific performance.

On June 12, 1947, Sullivan executed an instrument offering to sell the property for $2,000 through John Riehl, a realtor. There was nothing to indicate the offer was other than as an individual. Esterle submitted an offer to buy the property for $1,900, and deposited $100 with the agent to bind the contract. The next day Sullivan signed an acceptance. Below his name is the abbreviation "Ex." which, Sullivan testified, was to show that he signed it as an executor. As a matter of fact he was not an executor of a will of anybody concerned. Sullivan testified that Riehl had him thus sign it as a conditional acceptance or in a restricted or limited capacity. There is some contradiction of this. We agree with the chancellor that this was of no significance.

The title to the property had been in Ida E. Sullivan until her death in February,

1937. Thereafter, Riehl, by written authority, represented her several heirs and devisees in renting the property. Sullivan was one of them. Esterle had occupied it as a tenant for about two years before the above transaction and had known only Riehl in his relationship. Sullivan had no authority to contract to sell the property except his 1⁄12 undivided interest; but Esterle was never advised that he was acting without authority. He dealt altogether with Sullivan's agent.

After the completion of the contract, Esterle made arrangements to pay cash for the purchase price of his home by applying his savings and money which was actually transferred to his account by his wife's sister. Of course, the title company would not pass the title without a valid deed. The chancellor found that month after month Esterle had inquired about the consummation of the sale and insisted upon it; that he had received assurances that it would be done and that the delay was because of the number of parties who had to sign the deed. There is evidence that Riehl was continually after Sullivan to make the deed. The situation was especially brought to his attention about eight months after the contract was executed when Riehl told him, "Those Esterles are tormenting the life out of me; let's get this deed over with." Sullivan responded that there were two infant heirs in Tennessee, and they were trying to get guardians appointed for them; that they were working on it and would get it cleared up as soon as possible so the deal could be completed. Sullivan denied all this and stated he never heard anything more after making the contract. But, as stated, we concur in the finding of fact by the trial court. The matter thus went along for 3½ years. Esterle continued to live in the property and to pay rent to the agent. He never indicated his withdrawal from the deal nor asked for the return of the $100 he paid and it was never tendered back to him. But he did not pay the taxes or exercise any right or obligation as owner except to paint the house. The property enhanced in value. Philip Morris & Company desired it for use in connection with its nearby factory.

A representative of that company called on Esterle, who told him he owned the property. But the company learned the title was still in the Sullivan heirs and bought the property from them in January, 1951, for $5,000. The judgment is for the difference between that sum and what Esterle had contracted to buy the property for, $1,900.

Summarizing, the proof is: (1) Riehl was Sullivan's agent. (2) Sullivan assumed the authority to contract the sale, doubtless believing that it would be consummated by his co-owners. (3) Esterle never abandoned the contract but continuously insisted through the 3½ years on its being consummated, he being ready, willing and able to do his part, and, in effect, continuously offered to perform the contract. (4) There is no evidence that the vendor did anything to obtain a deed. (5) He personally or by his agent never repudiated the transaction until the property was sold to a third party. (6) Eventually, Esterle was evicted of possession as a tenant by Philip Morris & Company. (7) Sullivan is an experienced businessman while Esterle is inexperienced and had been led to believe all along that he would get his deed. (8) Sullivan's agent retained Esterle's $100 even after this suit was filed.

■ It is well settled law that one who makes a valid contract to sell land when he does not have an absolute title or when he knows he has no right to recovery assumes the risk of consummating the sale or of responding in damages for the vendee's loss of his bargain. Raisor v. Jackson, 311 Ky. 803, 225 S.W.2d 657.

The appellant contends that the appellee (1) abandoned the contract and was guilty of laches barring recovery because he had not exercised any right or obligation as an owner; and (2) recovery in any event should have been the difference in the purchase price and the market value of the property at the time the transaction contract was made (which was none) and not 3½ years later.

■■ We find no merit whatever in the first point. There was no evidence of

abandonment of the trade by the vendee. We perceive no laches on his part. He displayed unusual confidence and indulgence. All the wrong was on Sullivan's side of the transaction. His action smacks of unfairness and gives rise to a suspicion of bad faith. It does not appear there was any difficulty in conveying a good title to a purchaser willing to pay more than 2½ times the sum for which the property was sold to Esterle. Sullivan's conduct is certainly not such as merits the aid of a court of equity. The right of recovery is clear. The only difficulty in the case concerns the criterion of time for measuring the damages.

In Raisor v. Jackson, supra, 311 Ky. 803, 225 S.W.2d 657, on an exhaustive review of the cases and conflict in the decisions, we held there was and should be no difference in the quantum of damages whether the contracting vendor believed he had a right to convey but could not or whether he knew he did not have complete title and assumed a third person would ratify his contract and make the conveyance. The real purpose and effect of the decision was to bring the rule as to deals where the contractor acted in good faith and was without fault into the same category as other classes of transactions so that in either class substantial rather than nominal damages are recoverable if proven. This case clears up the confusion and takes some intermediate decisions out of consideration here. In that case it was said that the measure should be the difference between the contract price and the reasonable market value at the time the contract was executed. The sale was by means of the acceptance of a bid at an auction of the land. That was repudiated a few days later, and shortly thereafter the land was sold to a third person. The opinion on the second appeal Jackson v. Raisor, Ky., 248 S.W.2d 905, 906, shows that the first purchaser had alleged the "market value of the real estate at the time of the auction sale was $5,000 more than the price he bid at the sale, and

he sought damages for such difference". A judgment for $2,500 was reversed because of the admission of incompetent evidence respecting the market value at that time. Not only did the plaintiff plead that as being the time for determining his damage, but the short interval between the auction sale contract and the repudiation would seem to make the difference in time of valuation of little or no consequence.

In the early cases of Fisher's Heirs v. Kay, 1811, 2 Bibb 434, 5 Ky. 434, and Gerault v. Anderson, 1812, 2 Bibb 543, 5 Ky. 543, this court held where a vendor sells land to another than to him he had contracted to sell it, he is deemed to have acted fraudulently and the first purchaser is entitled to recover the value of the land which was to be ascertained "at the time of the swearing of the jury." In Stephenson v. Harrison, 1823, 3 Litt. 170, 13 Ky. 170, the value was held to be the particular day on which the vendor had contracted to deliver possession of the land. These cases laid the foundation for future adjudications.

In 3 American Law of Property, Sec. 11.67, it is shown to be the prevailing rule that the value of the land is to be determined on the basis of the highest cash price obtainable as of the time fixed for its conveyance to the purchaser. In accord therewith are the cases of Jenkins v. Hamilton, 153 Ky. 163, 154 S.W. 937; [1] and Gordon v. Wanless, 231 Ky. 498, 21 S.W.2d 815. The facts were different but the principle the same in Kramer v. Mobley, 309 Ky. 143, 216 S.W.2d 930, 931, 933, in which the court, through Judge Rees, stated that where the vendor in an executory contract for the sale of real estate refuses to convey to the vendee a good and marketable title as required by the contract, "the measure of damages is the difference, if any, between the contract price and the market value of the property either at the time of the breach or at the time fixed for deliv-

---

1. The disapproval of the opinion in Crenshaw v. Williams, 191 Ky. 559, 231 S.W. 45, 48 A.L.R. 5, was the decision of the right to recover more than nominal damages, which right, however, was reasserted or re-established in Raisor v. Jackson, supra.

ery." It is also held where a seller seeks damages from a purchaser who did not perform an executory contract that the date of the breach is the time which determines damages. Allison v. Cocke's Ex'rs, 112 Ky. 212, 65 S.W. 342, 66 S.W. 392; Harmon v. Thompson, 119 Ky. 528, 84 S.W. 569. This seems to be the rule generally in other jurisdictions. Annotations, 48 A.L.R. 41, 60; 68 A.L.R. 140.

Returning to the present case. No time was fixed in the contract for the conveyance to be made; hence, the law implied it was to be a reasonable time thereafter. But in this instance there was a continuing holding out to the purchaser with the assurance through the long period that a deed would be made, and during all that time the partial consideration was retained by the contracting vendor. The contract remained executory until it was repudiated and breached by the vendor when he and his co-owners conveyed the property to the third person. The chancellor rightly determined the market value at the time of the breach to be what the third party paid for the property, there being no other evidence of value at that time.

The judgment is affirmed.